THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACQUELINE BRACKETT, Defendant-Appellant.

Second District    No. 2—95—0524

Opinion filed May 13, 1997.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, and Vincent C. Argento and Linda A. Johnson, both of Argento & Klein, Ltd., both of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (John X. Breslin and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Jacqueline Brackett, appeals her conviction of aggravated robbery (720 ILCS 5/18—5 (West 1994)). Defendant contends that (1) the aggravated robbery statute is unconstitutionally vague and (2) she was not proved guilty beyond a reasonable doubt. We affirm.

Suzanne Cooke was working at a McDonald's on 75th Street on June 25, 1994. At about 11:20 p.m., she heard the tone for the drive-through window, but no order was placed. As Cook opened the window she saw a black female wearing sunglasses and driving an older, maroon car. The woman in the car had a coat draped over her arm. Underneath the coat "she had her finger pointed like there was a gun." The woman announced a robbery.

Cooke took money from the register and attempted to hand it to the robber "in a messy pile." However, the woman instructed her to put the money in a bag. Cooke found a souvenir hat from a World Cup soccer promotion, put the money inside, and placed the hat in a clear plastic bag. As the car left McDonald's and turned right onto 75th Street, Cooke noticed that its license plate number began with either "KIF" or "KIP." Cooke reported the robbery to her manager. After taking about five minutes to close the restaurant, the manager called the police.

Cooke described the robber as wearing a purple shirt and having short hair pulled back. She had a gap in her teeth. The coat wrapped over the woman's arm was inside out and had a white quilted lining.

Raymond Moeller, a Woodridge police officer, saw a car make an illegal left turn across two lanes of traffic onto 75th Street, near the McDonald's, at 11:23 p.m. He stopped the car, a maroon Buick with license plate number KIP 536. He recognized the driver, a black female wearing a purple shirt, as someone he had stopped two days before. After a brief conversation, Moeller decided against issuing any tickets.

Four or five minutes later, Moeller received a dispatch about a robbery at the McDonald's. The description of the car matched that of the one he had just stopped. At about 1:30 a.m., he went to defendant's address and asked her to accompany him to the police station.

Officer Chris Marema responded to the report of the robbery. He learned that Officer Themos had located, at a nearby apartment complex, a car similar to that used in the robbery. Its license plate number was KEP 536. Marema went there and found the car next to a dumpster. The police brought Cooke to the complex, where she identified the car as the one used in the robbery.

Several officers kept the car under surveillance. At about 1:20 a.m., a black woman approached the car. She said that the car belonged to a friend of hers and provided the officers with an address in Bolingbrook. Marema, Moeller, and Detective Bohm went to the Bolingbrook address and spoke to a woman. She identified herself as the mother of the person for whom they were looking. She summoned defendant, who agreed to accompany the officers to the police station. Moeller recognized defendant as the woman he had stopped earlier that night.

The officers took Cooke to the Woodridge police station to help prepare a computer sketch of the suspect. After it was completed, the police informed her that they had someone in custody. Cooke thereafter saw defendant behind a window from about two feet away. Cooke "pretty much recognized her," but could not make a positive identification. Later, the officers had the suspect read some words from a paper. Cooke then noticed the gap in her teeth and positively identified defendant as the robber.

After Cooke identified defendant in the second showup, Marema told defendant that she had been identified. Defendant denied being involved. She said that the car had been having mechanical problems, and she had left it at the Woodridge apartment complex to have some work done on it. Her brother had been driving the car recently, but no one had driven it on the night in question.

Marema recovered $90 from defendant's purse. Defendant signed a consent-to-search form for the car and accompanied the officers back to the apartment complex, where she gave Marema keys for the car. Inside the car, he found a pair of sunglasses similar to the ones Cooke had described and a note with words to the effect of "give me your money or I'll blow your head off."

According to Marema, a dumpster was right next to the driver's door. He looked in the dumpster and found a McDonald's promotional soccer cap inside a plastic bag and a white quilted jacket. Marema returned to the police station, where Cooke identified the cap, bag, and jacket as the ones connected with the robbery. No fingerprints were taken from the recovered items.

Defendant's mother, Ernestine Brackett, testified that defendant arrived home about 15 minutes before the police arrived. She did not know who dropped defendant off but stated that defendant does own a maroon Buick.

Charles Brackett, defendant's brother, testified that he was at home with his girlfriend, Marla Cosey, on June 25, 1994. Defendant arrived at 11:29 p.m. She did not appear nervous.

Marla Cosey stated that she had been with defendant earlier in

the day of June 25. Defendant cashed two checks at Dominick's for $50 each. Defendant arrived at the apartment at 11:28 or 11:29, at the end of "All in the Family."

Defendant testified that on June 25, 1994, she was driving east on 75th Street, having left the Taco Bell. She made an illegal left turn because the car was "running rough." When Officer Moeller stopped her, she said that she was trying to get to her brother's house. She said that the sunglasses previously identified were not hers and that she had cashed two checks earlier in the day for $50 each. She did not rob the McDonald's, was not missing any teeth, and the jacket found in the dumpster was not hers.

The trial court found defendant guilty and sentenced her to five years' imprisonment. Defendant filed a timely notice of appeal.

■ Defendant's first contention on appeal is that the aggravated robbery statute is unconstitutionally vague because it contains insufficiently clear standards for those who enforce the statute and therefore may lead to arbitrary or discriminatory enforcement. The statute in question provides:

> "(a) A person commits aggravated robbery when he or she takes property from the person or presence of another by the use of force or by threatening the imminent use of force while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm. This offense shall be applicable even though it is later determined that he or she had no firearm in his or her possession when he or she committed the robbery." 720 ILCS 5/18—5(a) (West 1994).

Defendant contends that enforcement of the statute turns solely on the arresting officer's interpretation of the word "indicating." She argues that "[a]ggravated robbery charges may be brought when there is simply a suspicion that a person acted in such a way that one person might believe the actor had a gun but another person may view the act as innocent conduct."

According to defendant, the police thus have virtually unfettered discretion in determining what is an "indication" that the suspect may have been armed with a gun. She equates the statute in question with the ordinances found to be invalid in *Kolender v. Lawson*, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983), and *Papachristou v. City of Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972).

■ Statutes are presumed constitutional. Therefore, the party challenging the statute has the burden of clearly establishing its constitutional infirmity. *People v. Hickman*, 163 Ill. 2d 250, 257 (1994). A court has the duty to construe a statute so that it is constitutional

if it can reasonably be done. *People v. Bales*, 108 Ill. 2d 182, 188 (1985).

■ Due process requires that a statute must provide sufficiently definite standards for law enforcement officers and fact finders so that its application does not depend merely on their private conceptions. *Hickman*, 163 Ill. 2d at 256; *People v. Fabing*, 143 Ill. 2d 48, 53 (1991).

■ The aggravated robbery statute provides sufficiently definite standards to guide officers and fact finders and to minimize the danger of arbitrary enforcement. It is not similar to the statute and ordinance the Supreme Court found to be constitutionally infirm in *Kolender* and *Papachristou*.

In *Kolender*, the Court declared invalid a California statute that penalized anyone "[w]ho loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do." *Kolender*, 461 U.S. at 353 n.1, 75 L. Ed. 2d at 906 n.1, 103 S. Ct. at 1856 n.1, quoting Cal. Penal Code Ann. § 647(e) (West 1970). The Court found that the statute gave the police "virtually complete discretion *** to determine whether the suspect has satisfied the statute." *Kolender*, 461 U.S. at 358, 75 L. Ed. 2d at 909, 103 S. Ct. at 1858.

Similarly, in *Papachristou*, the Court struck down a Jacksonville city ordinance providing that "[r]ogues and vagabonds, *** persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, *** shall be deemed vagrants." *Papachristou*, 405 U.S. at 156 n.1, 31 L. Ed. 2d at 112 n.1, 92 S. Ct. at 840 n.1. The Court noted that the ordinance furnished "a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.' " *Papachristou*, 405 U.S. at 170, 31 L. Ed. 2d at 120, 92 S. Ct. at 847, quoting *Thornhill v. Alabama*, 310 U.S. 88, 97-98, 84 L. Ed. 1093, 1100, 60 S. Ct. 736, 742 (1940).

The problem with the vagrancy statutes at issue in *Kolender*, *Papachristou*, and similar cases was that they defined inherently innocuous conduct and gave the police virtually unlimited discretion to determine whether to arrest someone for a violation. The potential for arbitrary and discriminatory enforcement against "particular groups" was apparent.

The statute at issue here, by contrast, defines conduct that is inherently criminal: "tak[ing] property from the person or presence of another by the use of force or by threatening the imminent use of force" (720 ILCS 5/18—5 (West 1994)). The statute does not give the

police inordinate discretion in determining whether to make an arrest. It permits charging the more serious offense based on the impression the conduct made upon the victim, not the police officer.

In this respect, the statute is like many others that define criminal conduct in terms of the acts' effects upon the victim's state of mind. For example, the assault statute defines the offense as "conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12—1 (West 1994). Obviously, what constitutes a reasonable apprehension of receiving a battery is not capable of precise definition. Although the application of this standard on a case-by-case basis is not without difficulty (see generally *Soldal v. County of Cook*, 923 F.2d 1241, 1250 (7th Cir. 1991); 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.16, at 316-17 (1986) (hereafter LaFave & Scott)), the statute's constitutionality has never been seriously challenged. In *People v. Cavanaugh*, 13 Ill. 2d 491, 492 (1958), the supreme court rejected without comment an argument that the aggravated assault statute was unconstitutionally vague.

As two commentators have stated:

> "The criminal law is full of instances in which the legislature has passed on to the administrators some responsibility for determining the actual boundaries of the law, as with the frequent occasions when a jury is asked to determine whether the defendant acted 'reasonably' in some respect." 1 LaFave & Scott § 2.3(c), at 133.

Here, the statute is no more vague than necessary to define the offense. What constitutes "indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm" is not capable of precise definition and is a question properly left to be determined by the fact finder on a case-by-case basis. We are confident that the danger of arbitrary enforcement against innocuous conduct has been minimized.

Moreover, defendant's conduct clearly falls within the statutory proscription. When a statute is challenged on grounds not involving first amendment concerns, it must be examined in light of the facts of the case at hand. *People v. Ryan*, 117 Ill. 2d 28, 34 (1987). Here, Cooke testified clearly that defendant had her arm covered with a jacket and held her finger in such a way as to give the impression that she had a gun under the jacket.

■ Defendant's argument that the victim did not mention the suspected presence of a gun until trial and therefore may have been coached by the police or prosecutors to tailor her testimony to bring defendant's conduct within the more serious offense is pure speculation unsupported by the record. Cooke testified that she told her

manager "exactly what happened," and, after the police arrived, "went into more detail with them." Moreover, the computer sketch of the suspect generated by the police sketch artist contains the legend, "Offender's left arm was covered by a jacket, possibly hiding a weapon. No weapon was mentioned but was inferred by the concealment." Thus, there is no evidence in the record that Cooke changed her testimony merely to convict defendant of the more serious offense.

Defendant next contends that the evidence was insufficient to establish her guilt beyond a reasonable doubt. She maintains that Cooke's identification of her as the robber was tainted because the two one-person showups were unduly suggestive. In addition, she contends that numerous other inconsistencies in and omissions from the evidence created a reasonable doubt of her guilt.

■ Where the sufficiency of the evidence is challenged on appeal, the relevant question is whether, after viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. *People v. Clemons*, 277 Ill. App. 3d 911, 923 (1996). A reviewing court is not permitted to substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, the credibility of the witnesses, or the resolution of conflicting testimony. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

■ As part of her reasonable doubt argument, defendant contends that the one-person showups conducted at the Woodridge police station were unnecessarily suggestive and tainted the subsequent identification. Defendant argues that no exigent circumstances existed that prevented the police from putting together a lineup.

The State contends that defendant has waived any issue regarding the identification procedures because she neither filed a pretrial motion to suppress the identification nor raised the issue in her posttrial motion. Generally, the failure to raise an issue in a post-trial motion results in the waiver of that issue. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, to the extent that the identification of defendant by the only eyewitness to the crime relates to the sufficiency of the evidence, we will consider the merits of this issue.

Although showup procedures such as those used here are not favored (see, *e.g., Stovall v. Denno*, 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972 (1967)), courts have approved them under certain circumstances, such as when a witness had an excel-

lent opportunity to observe the offender during the offense or where prompt identification is necessary for the police to determine whether to continue their investigation. *People v. Manion*, 67 Ill. 2d 564, 569-70 (1977); *People v. Hughes*, 259 Ill. App. 3d 172, 176 (1994).

The admission of evidence of a showup without more does not violate due process. *Manson v. Brathwaite*, 432 U.S. 98, 106, 53 L. Ed. 2d 140, 148-49, 97 S. Ct. 2243, 2249 (1977); *Neil v. Biggers*, 409 U.S. 188, 198, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382 (1972). The critical question is whether, under the totality of the circumstances, the identification is reliable. See *Manson*, 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253. The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Neil*, 409 U.S. at 199-200, 34 L. Ed. 2d at 411, 93 S. Ct. at 382.

Applying these factors to the present case, we conclude that the identification was sufficiently reliable. Cooke had an opportunity to observe the robber for a fairly long time while a conversation took place and Cooke searched for a bag in which to place the money. She testified that she was only two to three feet away from the robber and that she did not take her eyes off the suspect during that time.

Moreover, defendant closely matched Cooke's original description of the suspect. Cooke was almost certain of her identification after the initial showup and was completely certain following the second observation during which she observed the gap in defendant's teeth. Finally, the identification procedures occurred approximately two hours after the offense. The totality of the circumstances demonstrates that Cooke's identification was reliable.

■ Defendant points to several other discrepancies in the evidence that she claims create a reasonable doubt of her guilt. For example, she notes that the witnesses gave several different versions of the license number of the car involved in the robbery and of defendant's car and that Cooke failed to notice a sunroof or a bumper sticker on defendant's car. Also, defendant contends that it is contrary to human experience to have closed the store prior to calling the police to report the robbery, which is what Cooke testified was done.

In light of the overwhelming evidence of defendant's guilt, these minor discrepancies simply do not create a reasonable doubt. Cooke clearly and consistently identified defendant as the robber. Her car matched Cooke's description of the car involved. Officer Moeller testified that he stopped defendant near the scene of the robbery within

minutes after it occurred. Sunglasses identified as having been worn by the robber were found in defendant's car. A hat and plastic bag taken in the robbery, and a jacket worn by the robber, were found in a dumpster right next to where defendant's car was parked. Any inconsistencies or improbabilities in the testimony were for the consideration of the trial court as the finder of fact. Taken as a whole, the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE and THOMAS, JJ., concur.