No. 3--99--0239

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2001

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 12th Judicial Circuit,

 ) Will County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 97--CF--5552

 ) 

JUDE OPARAH, ) Honorable

                                ) Stephen D. White

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

   PRESIDING JUSTICE HOMER delivered the opinion of the court:

_________________________________________________________________

The defendant, Jude Oparah, was convicted of arson and burglary based on intent to commit arson (720 ILCS 5/20--1(a), 19--1(a) (West 1998)) in the Will County circuit court.  He now claims that: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the judge admitted irrelevant and prejudicial evidence; and (3) his arson conviction should be vacated because arson is a lesser included offense of burglary based on intent to commit arson.  We vacate his arson conviction and otherwise affirm the circuit court’s judgment.

BACKGROUND

The defendant’s case proceeded to a jury trial.  Edward Mabe, Jr., testified that on October 12, 1997, he was working at a Subway sandwich shop adjacent to a Rentway store in a Joliet strip mall.  The defendant, whom Mabe recognized as a Rentway employee, entered the shop and ordered a sandwich at 10:12 p.m.  The tape from Subway’s security camera confirmed the defendant’s presence in the store.  He stayed for about 20 minutes.

Phyllis Fowler testified that she was the manager of a Fannie May candy store next to Rentway.  When she arrived at work on October 13, 1997, her store had no electricity.  She noticed that an electric clock was stopped at 10:55 p.m.  She later discovered that the electricity had been shut off at a box on the back of the building.  Neither she nor her employees knew the electricity could be shut off at the box.

Allan Butryn, Rentway’s regional manager, testified that Rentway is a rent-to-own company dealing in televisions, appliances, and furniture.  He went to the Joliet store on October 13, 1997, and discovered that someone had started a fire causing $80,000 worth of damage.  Butryn had seen the video from Subway’s security camera, and he testified that it showed the defendant wearing dark pants on the night of October 12.  Rentway’s security camera had also captured video of the perpetrator starting the fire.  That video showed the perpetrator wearing dark pants, a jacket Butryn assumed was leather, and a bag over his or her head.  Butryn thought the perpetrator’s jacket was identical to a leather jacket he had seen the defendant wear regularly.  However, on cross-examination, Butryn acknowledged that he could not determine from the video whether the perpetrator’s jacket was leather or plastic.  He did notice that the top of the perpetrator’s head came even with a stripe on a couch in the background.  He subsequently measured the distance from the floor to the bottom of the stripe and determined that it was about 5 feet and 6 inches.

Police officer Arthur Vandergrift testified that he was dispatched to the Rentway store at approximately 2:50 a.m. on October 13, 1997.  When he arrived, he saw smoke inside the store and noticed that one of the doors was "busted up."

Fire investigator Richard Kurtz testified that he believed the fire was intentionally started on a sofa with an ignitable liquid.  He found a glass bottle under the arm of the sofa.  The parties stipulated that forensic testing of the bottle produced no fingerprints suitable for comparison.

Brian Naughton, Rentway’s store manager, described the defendant’s job performance as "average or below."  Naughton testified that he spoke with the defendant on September 8, 1997, intending to fire him for poor job performance.  The defendant advised that he planned to quit in two weeks, and Naughton consequently did not fire him.  However, Naughton did fire the defendant after the two-week period ended because he had not quit as expected.

Naughton further testified that all his employees knew about the store’s security camera system.  He viewed the Subway video and recognized the defendant.  He could not identify the perpetrator in the Rentway video.  Naughton also noted that the store’s power was supplied through boxes on the rear wall of the strip mall.

Timothy Brown, Rentway’s assistant manager, testified that the defendant owned a black leather jacket.  When asked about the defendant’s demeanor upon being fired, Brown stated: "[H]e didn’t seem like he wanted to go ballistic, but kind of subtle.  He took it very well to me, if you ask me."

Police detective Alan Horvath testified that he interviewed the defendant while investigating the fire.  He estimated the defendant’s height at 5 feet and 8 inches, but possibly "an inch or so shorter."  According to Horvath, the defendant gave the following account of his whereabouts before the fire: He arrived in Joliet on October 12, 1997, at about 9 p.m.  He went to Subway and then visited a woman whose name and address he did not provide to Horvath.  The defendant and the unknown woman went to Cub Foods, where the defendant called another woman named Beadenual and arranged to meet her later that evening.  He left the unknown woman’s residence between 11:30 p.m. and 12 a.m., arriving at Beadenual’s residence at about 12:30 a.m.  The defendant said he believed he was wearing blue jean pants and a blue jean jacket at that time.

Beadenual Williams testified that she was the defendant’s girlfriend.  She said the defendant called her on October 12, 1997, between 10 and 11 p.m., and she invited him to her residence.  He arrived at a little after 11 p.m. and stayed until about 4:10 a.m.  Williams was awake during that time, but the defendant fell asleep.

During a subsequent interview with Detective Horvath, Williams viewed the Subway video and said it depicted the defendant as he was dressed when he came to her residence (black pants and a black and white shirt).  She also viewed the Rentway video and said the defendant owned two leather jackets, but neither of them resembled the perpetrator’s jacket.  She told Horvath the defendant requested a plastic bag before leaving her residence, and she gave him one.  The bag was from either Certified Foods, Cub Foods, or Moo and Oink.

The defendant testified that his employment at Rentway was terminated on September 22, 1997.  He said on October 12, 1997, he arrived in Joliet at about 9:45 p.m. and went to Cub Foods alone.  He further said he arrived at Williams’ residence sometime before 11:30 p.m. and fell asleep.  He left in the morning when Williams awakened him.  He did not know what time he left, although he recalled that it was still dark outside.  The defendant denied telling Detective Horvath he visited another woman before visiting Williams, and that he wore blue jeans and a jean jacket on the night in question.

In rebuttal, Detective Horvath added that the defendant, during their interview, said he left Williams’ residence at approximately 6 a.m.  Horvath said Williams told him the defendant left her residence between 3 and 4 a.m.  Horvath also said Williams told him she believed the bag she gave the defendant was from Certified Foods.  After speaking with Williams, Horvath went to Certified Foods and obtained a bag.  When the bag was presented as evidence, he acknowledged that it was not found at the scene of the fire.

The judge admitted the bag into evidence over the defendant’s objection.  During closing arguments, the prosecutor noted that the Subway video showed two distinct white spots (presumably buttons) on the back of the defendant’s pants, and that the Rentway video showed similar spots on the back of the perpetrator’s pants.  The jury ultimately found the defendant guilty of arson and burglary, and he was sentenced to concurrent terms of nine years in the Department of Corrections.

ANALYSIS

The defendant first claims that the State failed to prove beyond a reasonable doubt that he was the person who committed the arson and burglary at Rentway.

Our function as a reviewing court is not to retry the defendant.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985).  The trier of fact was responsible for determining the witnesses’ credibility, weighing their testimony, and drawing reasonable inferences from the evidence.  
People v. Bailey
, 311 Ill. App. 3d 265, 724 N.E.2d 1032 (2000).  
The relevant question on review is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt.  
Collins
, 106 Ill. 2d 237, 478 N.E.2d 267.  We may not substitute our judgment for that of the trier of fact on questions involving evidentiary weight, witness credibility, or resolution of conflicting testimony.  
People v. Campbell
, 146 Ill. 2d 363, 586 N.E.2d 1261 (1992).  We will reverse the defendant’s convictions only if the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of his guilt.  
People v. Brackett
, 288 Ill. App. 3d 12, 679 N.E.2d 1285 (1997).

Applying these principles, we conclude that the State presented sufficient evidence to sustain the defendant’s convictions.  The defendant had a motive to commit the crimes because Rentway had just fired him.  He also had an opportunity to commit the crimes, as shown through his documented presence at the strip mall during the hours shortly before the fire.  Brian Naughton testified that all of Rentway’s employees knew the store had a security camera system.  Beadenual Williams testified that the defendant asked her for a plastic bag, and she gave him one.  The Rentway video showed that the perpetrator’s head was covered with a plastic bag.  Additionally, Allan Butryn testified that the perpetrator wore a jacket resembling a leather jacket the defendant wore regularly.

Detective Horvath’s description of the defendant’s height (5 feet 8 inches or "an inch or so shorter") comports with Butryn’s calculation of the perpetrator’s height (about 5 feet 6 inches).  Additionally, we have viewed both surveillance tapes.  The defendant’s physique in the Subway tape resembles the perpetrator’s physique in the Rentway tape.  The Subway tape shows the defendant wearing dark pants with two distinct white spots in the rear-pocket area.  The Rentway tape also shows the perpetrator wearing dark pants with seemingly identical spots.

Viewing this evidence, and all the other evidence, in a light most favorable to the prosecution, we cannot say that no rational trier of fact could have found beyond a reasonable doubt that the defendant committed the arson and burglary at Rentway.  The defendant’s contrary arguments pertain to matters within the responsibility of the trier of fact and are not subject to second-guessing on review.

In his next claim, the defendant asserts that the trial judge erroneously admitted the Certified Foods bag into evidence.  He claims that the bag was irrelevant and prejudicial because it was not connected to him or the crimes.

Evidence is relevant if it has any tendency to make the existence of a fact in consequence to the determination of the action more or less probable than it would be without the evidence.  
People v. Hope
, 168 Ill. 2d 1, 658 N.E.2d 391 (1995).  Relevant evidence is admissible as long as "its probative value is not substantially outweighed by its prejudicial effect."  
People v. Gonzalez
, 142 Ill. 2d 481, 487, 568 N.E.2d 864, 866 (1991).  We will not reverse a judge’s decision to admit evidence absent a clear abuse of discretion.  
People v. Case
, 246 Ill. App. 3d 566, 616 N.E.2d 601 (1993).

In light of these principles, we find no reversible error in the judge’s decision to admit the Certified Foods bag.  The Rentway video shows that the perpetrator’s head was covered with a plastic bag.  Williams admitted giving the defendant a plastic bag and noted that it could have been from Certified Foods.  According to Horvath, Williams said she believed the bag was from Certified Foods.  Under these circumstances, a resemblance between a Certified Foods bag and the bag worn by the perpetrator was a fact in consequence to the determination of the action.  That fact would have become more or less probable when the jury compared the bag Horvath obtained to the bag in the video.

We do not believe the bag’s probative value was substantially outweighed by its prejudicial effect.  The potential prejudice was tempered when Horvath acknowledged that he did not recover the bag from the scene of the fire.  The jurors understood that he obtained the bag directly from Certified Foods because of his conversation with Williams.  It is thus unlikely that their consideration of the bag exceeded the relevant purpose described above.  Accordingly, we cannot say that the judge’s decision to admit the bag was an abuse of discretion.

In his final claim, the defendant asserts that his arson conviction should be vacated because arson is a lesser included offense of burglary based on intent to commit arson.  We agree.

Our supreme court has adopted the "charging instrument" approach to identifying lesser included offenses.  
People v. Novak
, 163 Ill. 2d 93, 643 N.E.2d 762 (1994).  Under that approach, the deciding factor is "[whether] the instrument charging the greater offense sets out, at a minimum, the main outline of the included offense."  
People v. Lee
, 311 Ill. App. 3d 363, 370, 724 N.E.2d 557, 563 (2000).  The lesser offense does not have to be, theoretically or practically, a necessary part of the greater offense.  "Rather, the lesser [offense] need only relate to the greater to the extent that the charging instrument [for the greater] describes the lesser."  
Novak
, 163 Ill. 2d at 107, 643 N.E.2d at 770.

Under these principles, the defendant’s arson is a lesser included offense of his burglary.  The defendant was charged in count I of the indictment with arson, in that he knowingly, by means of fire, damaged personal property of Rentway, being furniture and appliances having a value of $150 or more without the consent of Rentway.  720 ILCS 5/20--1(a) (West 1998).  Count II of the indictment alleged burglary in that the defendant "without authority, knowingly entered a building of Rentway *** with the intent to commit the felony offense of Arson."  See 720 ILCS 5/19--1(a) (West 1998).  

Because the burglary indictment contained an allegation that the defendant entered the Rentway store intending to commit arson, that allegation necessarily implied that the defendant intended to use fire in damaging Rentway’s personal property, valued at over $150, without its consent.  See 
People v. Hamilton
, 179 Ill. 2d 319, 688 N.E.2d 1166 (1997) (an indictment alleging residential burglary based on intent to commit theft implicitly alleged the elements of theft).  Accordingly, the statutory elements of arson were implicitly contained in the burglary indictment, which fact renders the arson a lesser included offense.  See, 
e.g.
, 
People v. Bussan
, 306 Ill. App. 3d 836, 715 N.E.2d 820 (1999) (theft is a lesser included offense of burglary based on intent to commit theft); 
Hamilton
, 179 Ill. 2d 319, 688 N.E.2d 1166.

CONCLUSION

For the foregoing reasons, defendant’s arson conviction is vacated.  The judgment of the Will County circuit court is otherwise affirmed.

Affirmed in part and vacated in part.

HOLDRIDGE and LYTTON, J.J., concurred.