THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES HALL, Defendant-Appellant.

First District (6th Division)    No. 1—03—1276

Opinion filed September 3, 2004.—Rehearing denied October 21, 2004.

Michael J. Pelletier and Jennifer L. Blagg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, Sally L. Dilgart, and Elizabeth Novy, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following a bench trial, defendant Charles Hall (defendant) was convicted of aggravated robbery. He was sentenced to 10 years in

prison and ordered to submit DNA samples for genetic marker purposes pursuant to section 5—4—3(a—5) of the Unified Code of Corrections (730 ILCS 5/5—4—3(a—5) (West 2002)). He appeals, contending that the aggravated robbery statute (720 ILCS 5/18—5(a) (West 2000)) violates due process and that the compulsory extraction of DNA violates fourth amendment guarantees to be free from unreasonable searches and seizures. He asks that we (1) vacate his conviction and instead enter a finding of guilt for the lesser offense of robbery, and (2) that we find section 5—4—3(a—5) to be unconstitutional as applied to him, order the expungement of his DNA record from all databases, and order the destruction of any samples, analyses, or other documents relating to such record. For the following reasons, we affirm.

## BACKGROUND

The following facts, in brief, were adduced at trial.

Chad Ward testified that on July 13, 2001, he was working alone as an assistant manager of the Blockbuster Video store located in North Riverside. At about 11 a.m., there were two customers in his store, including defendant. Ward assisted a customer, who then left. He continued to work behind the check-out counter when defendant approached him and asked if he could ask Ward a question. Ward responded, "sure." Ward testified that defendant asked him if he had ever been shot. When Ward replied, "What?" defendant repeated the question. Ward then answered "no," and defendant asked him if he was wearing a bulletproof vest. Ward again answered "no." Ward averred that at this time, defendant asked him if he wanted to get shot and "grabbed at his [defendant's] waist," making this motion two or three times during the conversation. Ward, who assumed defendant had a gun or other weapon in his waistband, answered "no," whereupon defendant replied: "So, you're going to cooperate with me?" When Ward said "yes," defendant pulled two plastic bags from his pocket and told Ward that he did not want any money, just videotapes. Ward testified that defendant filled the plastic bags with some 50 digital video discs (DVDs) and a few videotapes, valued at over $700. Defendant warned Ward not to call the police and that he was watching him. As defendant left the store, he watched Ward through the store windows. Ward further testified that he called the police after defendant left his sight. Upon doing inventory, Ward discovered that among the items missing were two videotapes.

Additional testimony and evidence presented at trial showed that shortly after noon on the same day, defendant was pulled over by police pursuant to a traffic stop. Two videotapes were recovered from

his car and identified as those two videotapes missing from the store, bearing the same titles. A surveillance tape of the store taken at the time of the incident was also introduced at trial and viewed by the court.

At the close of trial, the court in its colloquy noted that it had reviewed all the evidence, believed Ward to be a "credible and reliable witness," and found the evidence sufficient to prove defendant guilty of aggravated robbery. Specifically, with respect to the aggravated nature of the charge, the court stated:

> "As to [defendant's] questioning of have you ever been shot, are you wearing a bulletproof vest, would you want to be shot and then making an indication toward his waistband, is sufficient for the—to satisfy the charge [of aggravated robbery]."

Because defendant was a Class X offender, the court sentenced him to 10 years in prison. The court then granted the State's motion ordering defendant to submit DNA samples for genetic marker purposes pursuant to statute.

## ANALYSIS

Defendant presents two issues on appeal. We address each separately.

### I. Aggravated Robbery and Due Process

Defendant's first contention on appeal is that his conviction for aggravated robbery must be vacated and reduced to simple robbery because the aggravated robbery statute under which he was convicted violates due process. He asserts that the statute is unconstitutionally vague on its face and as applied to him because it rests solely on the subjective impression of the victim; that is, he insists that one may be convicted of aggravated robbery even if the victim unreasonably believed that person to have been armed, as occurred here. Defendant claims that the statute fails to provide people with a reasonable opportunity to distinguish between lawful and unlawful conduct, and fails to provide a sufficiently definite standard to avoid arbitrary or discriminatory application of its terms. We disagree.

■ A statute is presumed to be constitutional, and, thus, the party challenging it bears the burden of clearly demonstrating its invalidity. See *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003); accord *People v. Bailey*, 167 Ill. 2d 210, 225 (1995); *People v. Zapata*, 347 Ill. App. 3d 956, 966 (2004). We are duty-bound to construe a statute in a manner that upholds its validity and constitutionality, if this can reasonably be done. See *Cryns*, 203 Ill. 2d at 290-91; accord *In re C.E.*, 161 Ill. 2d 200, 227 (1994); *People v. Cosby*, 305 Ill. App. 3d 211, 224 (1999) (we must affirm statute's constitutionality and validity

whenever possible). In examining a statute's constitutionality, we employ a *de novo* standard of review. See *Zapata*, 347 Ill. App. 3d at 967.

■ As a threshold matter, we note that, in addition to his contention that the aggravated robbery statute is unconstitutional as applied to him in the instant case, defendant makes a facial challenge to the statute as a whole. However, the law is clear that he does not have standing to do this, since the aggravated robbery statute does not involve first amendment rights. See *Cryns*, 203 Ill. 2d at 291; *Bailey*, 167 Ill. 2d at 231. Rather, in order for defendant to succeed on his vagueness challenge of this statute, he must establish that the statute is vague as applied to the conduct for which he was prosecuted, *i.e.*, with respect to the particular facts of his specific case. See *Cryns*, 203 Ill. 2d at 291; *People v. Holt*, 271 Ill. App. 3d 1016, 1026 (1995). It is only within this narrow context of review that we may entertain his challenge. See *Cryns*, 203 Ill. 2d at 291; accord *Holt*, 271 Ill. App. 3d at 1026 ("'[v]agueness claims against statutes that do not involve first amendment rights must be reviewed in the context of the specific case facts"). Even were we to allow a facial vagueness challenge to the aggravated robbery statute, defendant would be required to show that the statute is incapable of any valid application. See *People v. Izzo*, 195 Ill. 2d 109, 112 (2001) (a defendant cannot challenge facial vagueness of statute not implicating first amendment freedoms unless statute is incapable of any valid application); *Holt*, 271 Ill. App. 3d at 1026 (it is only when such statute is incapable of any valid application that it is unconstitutionally vague). As we will discuss in further detail, he simply is not successful in meeting this burden.

■ For a statute to comply with due process, it must meet two requirements. First, it must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful so that he may act accordingly. See *Bailey*, 167 Ill. 2d at 228. However, a statute need not define the proscribed conduct with "mathematical precision" or give letter-perfect notice of this conduct to avoid invalidation on vagueness grounds. See *Holt*, 271 Ill. App. 3d at 1026. Rather, as long as the statute clearly applies to the defendant's conduct in light of the facts of the case, a challenge to the statute's constitutionality based upon vagueness will not succeed. See *Cryns*, 203 Ill. 2d at 291-92; see *Holt*, 271 Ill. App. 3d at 1026 (where statute prohibits conduct knowingly done to accomplish that which is prohibited, accused cannot claim he suffered from lack of warning or knowledge that his conduct violated the law). The second requirement of due process is that the statute must provide explicit standards to police officers, judges and juries who apply the statute in order to

prevent its arbitrary and discriminatory enforcement. See *C.E.*, 161 Ill. 2d at 227. However, the statute will not be declared vague if a mere hypothetical situation involving disputed meanings of some of its terms is presented. See *People v. Greco*, 204 Ill. 2d 400, 416 (2003); see also *C.E.*, 161 Ill. 2d at 211, quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987) (" '[t]he fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid' "); *Holt*, 271 Ill. App. 3d at 1027 ("statute is not unconstitutionally vague simply because it allows some room for judicial interpretation"). Rather, where judicial construction of the statute may be employed to render it sufficiently definite so as to preclude arbitrary or discriminatory application, a challenge to the statute's constitutionality based upon vagueness will not succeed. See *C.E.*, 161 Ill. 2d at 228. In sum, a statute violates due process on vagueness grounds " ' "only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." ' " *Cryns*, 203 Ill. 2d at 291, quoting *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160, 168 (1997), quoting *People v. Burpo*, 164 Ill. 2d 261, 265-66 (1995).

The aggravated robbery statute states, in pertinent part:

"A person commits aggravated robbery when he or she takes property from the person or presence of another by the use of force or by threatening the imminent use of force while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon, including a knife, club, ax, or bludgeon. This offense shall be applicable even though it is later determined that he or she had no firearm or other dangerous weapon, including a knife, club, ax, or bludgeon, in his or her possession when he or she committed the robbery." 720 ILCS 5/18—5(a) (West 2000).

Accordingly, one commits aggravated robbery by committing robbery (taking property from the person or presence of another by force or the threat of force, as defined in section 18—1(a) of the Criminal Code of 1961 (720 ILCS 5/18—1(a) (West 2002)) while also indicating that he is armed with a firearm or other dangerous weapon, regardless of whether he is actually armed. See *People v. Gray*, 346 Ill. App. 3d 989, 994 (2004). It is this added factor that enhances the crime.

Our court has recently reviewed contentions identical to those of defendant here and has found the aggravated robbery statute to be constitutional. In *People v. Williams*, 329 Ill. App. 3d 846 (2002), the defendant was convicted following a bench trial of aggravated robbery when he entered the victims' place of business with his hand under

his shirt and demanded money. The victims testified that upon seeing the defendant's hand under his shirt and hearing him say that he was going to kill someone, they became scared and believed he had a weapon. On appeal, the defendant, as defendant here, asserted that the aggravated robbery statute was vague and violative of due process because it does not specify that a victim must reasonably believe that the offender is armed, that it does not provide adequate notice of what type of conduct is prohibited and that a conviction under it may unfairly rest entirely on the subjective impression of the victim. See *Williams*, 329 Ill. App. 3d at 851 (summarizing the defendant's contentions, which are identical to those made in the instant case). The *Williams* court disagreed with the defendant's claims that one will be convicted of aggravated robbery if he simply had " 'his hand in his pocket, behind his back, in his shirt sleeve, or *** under his [T]-shirt,' " as long as the victim also testifies that these actions caused him to believe the offender was armed, no matter how "unreasonable" that belief. *Williams*, 329 Ill. App. 3d at 851-52. While it acknowledged that the statute permits convicting a person based on the impression of the victim, the *Williams* court specifically held that this was of no consequence:

"[T]he danger of arbitrary and discriminatory enforcement is minimal in that the accused must also take property from the person by the use of force or by threatening the imminent use of force while indicating verbally or by his or her actions that he is presently armed with a firearm or other dangerous weapon." *Williams*, 329 Ill. App. 3d at 852.

The added factor of the victim's belief that the offender is armed, which is not listed as an element to the crime, does not call for a completely subjective review of the events at issue. Rather, as the *Williams* court points out, there are objective elements which undisputably must be met before the person charged with aggravated robbery may be convicted under the statute; these are that the person took the property, that he used force or threatened the use thereof, and that he indicated verbally or by his actions that he was armed. See *Williams*, 329 Ill. App. 3d at 852. Because of these, the aggravated robbery statute is saved from a vagueness challenge. See *Williams*, 329 Ill. App. 3d at 852.

■ Applying the two-part due process analysis outlined earlier, it is clear that the aggravated robbery statute is indeed constitutional, not void for vagueness, and should be reaffirmed as in *Williams*. The statute both sets forth what conduct is lawful and what conduct is unlawful, and provides sufficiently definite standards to guide triers of fact so that its application does not depend merely on their private

conceptions. There is no doubt that defendant's conduct in the instant case clearly falls within the statutory proscription. Defendant approached Ward (the victim) at the counter of the video store after all customers had left, asked Ward if Ward was wearing a bulletproof vest, questioned Ward with respect to whether Ward ever had been or presently wanted to be shot, and moved his hand to his waist in a grabbing motion two or three times while speaking to Ward. After asking Ward to cooperate, the defendant informed the victim that he was going to take property from the store, namely, videos, and proceeded to fill two plastic bags with some 50 DVDs and 2 videotapes, totaling over $700. Defendant then warned the victim that he would be watching him and not to call the police. We believe, as did the trial court here, that this conduct is undisputably prohibited by the aggravated robbery statute. The effect of his conduct on Ward need not be defined with mathematical precision, as the statute itself sets forth explicit other, objective standards and adequately defines conduct that is inherently criminal. See *People v. Brackett*, 288 Ill. App. 3d 12, 17-18 (1997) (holding that the aggravated robbery statute is not unconstitutionally vague even though it permits application based on the impression the defendant's conduct made upon the victim; while some terms of the statute may not be capable of precise definition, the statute defines conduct that is inherently criminal and the defendant's conduct (demanding money of store clerk while keeping coat draped over her arm and holding finger in such a way as to give clerk impression that she had a gun under her coat) clearly fell within aggravated robbery's statutory proscriptions).

While it is true that a subjective concept was interjected during trial when Ward testified that he was scared and believed defendant was armed with a weapon in his waistband (based on his motioning toward his waist while asking the fateful questions), the objective criteria to support a conviction under the statute were clearly present, particularly with respect to defendant's taking the property from Ward's presence, defendant's threats of force directed to Ward (veiled though they may have been), and defendant's motions toward his waist. Accordingly, because the aggravated robbery statute is not so ill-defined or lacking of all objective criteria, we will not declare it to be unconstitutionally vague as to violate defendant's due process rights.

## II. DNA Extraction and Unreasonable Search and Seizure

Defendant's second contention on appeal is that the compulsory extraction of DNA, as mandated by section 5—4—3(a—5), violates his right to be free from unreasonable searches and seizures under the

federal and state constitutions (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6). He asserts that pursuant to the "special needs test," section 5—4—3(a—5) evinces nothing more than a generalized attempt to aid law enforcement and, accordingly, cannot be upheld as constitutionally valid in light of the "individualized suspicion" requirement for fourth amendment purposes. Alternatively, defendant asserts that were we to forego this examination and instead employ a "balance test" reviewing the State's interests in compulsory DNA extraction and his privacy rights, the outcome undeniably favors him. We disagree with defendant's contentions and find the statute constitutional.[1]

■ As a threshold matter, we note that both the United States and Illinois Constitutions protect citizens from unreasonable searches and seizures, thereby upholding the legitimate expectations of privacy they possess in their homes, in their belongings and, as particularly relevant here, in their persons. See *In re Robert K.*, 336 Ill. App. 3d 867, 870 (2003); see also *People v. Garvin*, 349 Ill. App. 3d 845, 853 (2004) (extraction and analysis of a biological sample is a search within the meaning of the fourth amendment). However, it must be remembered that the fourth amendment, as applied to the states by the fourteenth amendment, does not proscribe all searches and seizures but only those that are unreasonable, thereby upholding at the same time fair leeway for the enforcement of law and the protection of the community at large. See *People v. Wealer*, 264 Ill. App. 3d 6, 10 (1994); *Robert K.*, 336 Ill. App. 3d at 870. Section 5—4—3(a—5) calls for DNA sampling from any person convicted of any offense classified as a felony under Illinois law. See 730 ILCS 5/5—4—3(a—5) (West 2002); *Garvin*, 349 Ill. App. 3d at 853. Whether this section violates fourth amendment concerns is a question of law that we review pursuant to a *de novo* standard. See *Robert K.*, 336 Ill. App. 3d at 870-71.

■ Courts across this nation, both federal and state, supreme and district, have been confronted with the issue of genetic marker testing and its validity under the auspices of the fourth amendment. See *Garvin*, 349 Ill. App. 3d at 853-54 (listing all such state statutes and cases). Two approaches in dealing with this question have emerged: the "special needs test" and the "balance test." See *Garvin*, 349 Ill. App. 3d at 855; see, *e.g.*, *Wealer*, 264 Ill. App. 3d 6; *State v. Steele*, 155 Ohio App. 3d 659, 802 N.E.2d 1127 (2003); *In re D.L.C.*, 124 S.W.3d

---

[1]We note, as do the parties on appeal, that it is unclear from the record below whether defendant's DNA has indeed been extracted pursuant to the trial court's order. Nevertheless, we elect to review defendant's contentions with respect to this issue.

546

354 (Tex. Ct. App. 2003); *Nicholas v. Goord*, No. 01 Civ. 7891 (S.D.N.Y. February 6, 2003); *State v. Martinez*, 276 Kan. 527, 78 P.3d 769 (2003). Defendant has provided us on appeal with a lengthy discussion advocating the adoption of the special needs test.

However, since the filing of his case with our court, Illinois law has become undeniably clear that, contrary to defendant's assertion, we reject the special needs test and instead follow the principles of the balance test. See *Garvin*, 349 Ill. App. 3d at 855. In *Garvin*, which is directly on point with the instant case, the defendant was convicted after a bench trial of burglary and theft and was ordered to give blood samples for genetic marker collection pursuant to the statute. In a plea identical to defendant's here, that defendant sought the declaration from our Second District reviewing court that the statute was unconstitutional as violative of fourth amendment concerns. In beginning its review, the *Garvin* court noted that all 50 states and the District of Columbia have enacted similar genetic marker collection statutes and that all challenges to the constitutionality of these statutes have been dismissed. See *Garvin*, 349 Ill. App. 3d at 853-54 (specifying the 51 statutes and those cases challenging them, which failed in their arguments of unconstitutionality under fourth amendment concerns). Substantively, the *Garvin* court commented that while our nation's courts have not yet committed to the exclusive use of only one of the tests, a majority of them have applied the balance test and our state courts in particular had already specifically and definitively rejected the special needs test in its favor. See *Garvin*, 349 Ill. App. 3d at 855 (citing *Wealer* as the Illinois case definitively rejecting the special needs test and adopting the balance test). Deeming the balance test's approach to be "more persuasive," it applied that test and concluded, contrary to the defendant's contentions, that the statute was constitutional and in line with the fourth amendment. See *Garvin*, 349 Ill. App. 3d at 856.

Long before *Garvin*, which is of conclusive precedential value, the *Wealer* court chose to invoke the balance test with respect to genetic marker collection. See *Wealer*, 264 Ill. App. 3d at 14-15 (explaining the "several reasons" for employing balance test over other tests). This test is the more traditional when dealing, as here, with fourth amendment concerns. See *Wealer*, 264 Ill. App. 3d at 14; accord *Steele*, 155 Ohio App. 3d at 668, 802 N.E.2d at 1134 (this test applies in "traditional Fourth Amendment analysis"). It relies "primarily on the perceived willingness of the United States Supreme Court, under certain circumstances, to relax or eliminate any requirement of probable cause or individualized suspicion where the nature of the intrusion occasioned by a particular search or seizure is minimal and the

government's interest significant." *Wealer*, 264 Ill. App. 3d at 14. Accordingly, the balance test requires us to balance the governmental need for and interest in genetic marker collection (the search and seizure) with defendant's expectations of privacy in his person and the intrusive nature of the procedure in order to determine whether DNA collection is a reasonable search and seizure. See *Wealer*, 264 Ill. App. 3d at 14; *People v. Calahan*, 272 Ill. App. 3d 293, 299 (1995).

With respect to the governmental interest, it is well established that the State has a strong and legitimate interest in deterring and prosecuting recidivist criminal acts. See *Garvin*, 349 Ill. App. 3d at 855; *Wealer*, 264 Ill. App. 3d at 16; accord *Robert K.*, 336 Ill. App. 3d at 871. Genetic marker collection is closely related to this interest. See *Garvin*, 349 Ill. App. 3d at 855. In addition, the State has an interest in establishing the identity of felons where traditional means of doing so are beginning to prove inadequate and inconclusive. See *Garvin*, 349 Ill. App. 3d at 855, quoting *Miller v. United States Parole Comm'n*, 259 F. Supp. 2d 1166, 1177-78 (D. Kan. 2003) (DNA testing "is a precise technological method of identifying *** potential suspects" and "is more conclusive [than traditional methods of identification such as photographing and fingerprinting; it] 'can practically guarantee a 100% certain identity' "); see also *Wealer*, 264 Ill. App. 3d at 16; *Robert K.*, 336 Ill. App. 3d at 871. Genetic marker collection aids the State, not only in identifying repeat offenders who attempt to otherwise conceal or alter their identity, thereby solving past and future crimes, but also in eliminating potential suspects or those wrongly convicted of crimes. See *Garvin*, 349 Ill. App. 3d at 855; *Wealer*, 264 Ill. App. 3d at 16-17; accord *Robert K.*, 336 Ill. App. 3d at 871; *Calahan*, 272 Ill. App. 3d at 299-300, quoting *Jones v. Murry*, 962 F.2d 302, 307 (4th Cir. 1992) (helps to establish permanent record to solve crime in age where disguises used to commit crimes are becoming more complex; thus, argument for genetic marker collection has additional force due to this process's greater precision).

These interests are balanced against defendant's concerns regarding his privacy and the "intrusive" nature of genetic marker collection. With respect to his expectation of privacy, it is well established that convicted persons lose some rights to personal privacy that would otherwise be protected under the fourth amendment. See *Garvin*, 349 Ill. App. 3d at 855; *Wealer*, 264 Ill. App. 3d at 17, quoting *People v. Adams*, 149 Ill. 2d 331, 348 (1992) (convicted persons, though not yet incarcerated, "maintain a diminished level of privacy rights as compared to free persons" and "[o]ur supreme court has previously recognized that 'offenders necessarily have reduced expectations of privacy' "). Our courts have repeatedly held that once a person is

convicted as a felon, his identity becomes a matter of state interest and he loses any legitimate expectation of privacy in the identifying information derived from bodily sampling, such as DNA extraction. See *Garvin*, 349 Ill. App. 3d at 855; *Robert K.*, 336 Ill. App. 3d at 871; accord *Wealer*, 264 Ill. App. 3d at 17. Moreover, with respect to the nature of genetic marker collection, it has been "universally determined" that a blood draw from a convicted person to gather genetic information for identification involves only a minimal intrusion. *Garvin*, 349 Ill. App. 3d at 856. It is neither offensive nor imposing but, rather, " 'relatively slight and poses no threat to the health or safety of the individual.' " *Garvin*, 349 Ill. App. 3d at 856, quoting *Wealer*, 264 Ill. App. 3d at 16; see also *Robert K.*, 336 Ill. App. 3d at 871 (statute is "functionally equivalent to fingerprinting"); *Calahan*, 272 Ill. App. 3d at 299 (analogizing DNA extraction to other common booking procedures).

Applying the balance test, we conclude that any slight intrusion upon defendant's diminished privacy rights in providing a sample for genetic marker collection under the statute is significantly outweighed by the State's compelling interests in preventing recidivism, correctly identifying offenders and solving past and future crimes. Therefore, the statute at issue is not unconstitutional.[2]

Even were we to proceed, as defendant would have us, under the special needs test, his claims would still fail. Courts outside our state which employ this test follow a doctrine that allows for searches and seizures without a warrant and without individualized suspicion as long as a governmental interest exists "beyond the normal need for law enforcement." *Steele*, 155 Ohio App. 3d at 668, 802 N.E.2d at 1134; *Martinez*, 276 Kan. at 530, 78 P.3d at 772; *D.L.C.*, 124 S.W.2d at 371. In other words, a warrantless search will be deemed constitutional if the government can point to a "special need" for it other than the generic need to procure criminal convictions or assist law enforcement. See *Steele*, 155 Ohio App. 3d at 668, 802 N.E.2d at 1134. This special needs test has two parts. See *D.L.C.*, 124 S.W.2d at 371-73. First, we must determine whether such a special need exists; this

---

[2]We note, as defendant does in his brief on appeal, that some of the older cases cited herein involve sex offenders and were decided before the genetic marker collection statute was amended to its current form to include all felons and not simply sex offenders. However, the reasoning used by our reviewing courts in those cases is not limited to sex-offender defendants but, rather, proves invaluable to our instant decision. Moreover, we specifically note again that the defendant in *Garvin*, as defendant here, was convicted of property crimes; that court had the foresight to employ the reasoning of *Wealer* and related cases, and we too apply the same.

involves a discernment of the primary purpose of the genetic marker collection statute. See *D.L.C.*, 124 S.W.2d at 371; accord *Steele*, 155 Ohio App. 3d at 670-71, 802 N.E.2d at 1136. If a special need does exist, we must then evaluate the reasonableness of the intrusion; this involves a balancing analysis of the government's special need and the defendant's privacy rights. See *Steele*, 155 Ohio App. 3d at 672, 802 N.E.2d at 1137; accord *D.L.C.*, 124 S.W.2d at 372-73; *Martinez*, 276 Kan. at 535, 78 P.3d at 774.

Those courts employing the special needs test have concluded that while there certainly is a relationship between genetic marker collection statutes and the solving of crimes, the immediate and primary purpose of these statutes is to fill and maintain a DNA database, a purpose "distinct from the regular needs of law enforcement." *Steele*, 155 Ohio App. 3d at 671, 802 N.E.2d at 1136; see also *D.L.C.*, 124 S.W.2d at 372-73; *Martinez*, 276 Kan. at 533, 78 P.3d at 773; see, *e.g.*, *Nicholas*, No. 01 Civ. 7891 (providing a thorough and well-reasoned discussion of this issue); *United States v. Kincade*, No. 02—50380 (9th Cir. August 18, 2004). This is because these statutes are not designed to discover and produce evidence of a specific individual's criminal wrongdoings. See *Steele*, 155 Ohio App. 3d at 671, 802 N.E.2d at 1136; *D.L.C.*, 124 S.W.2d at 372; *Martinez*, 276 Kan. at 534-35, 78 P.3d at 774. Rather, they essentially prove nothing. See, *e.g.*, *Nicholas*, No. 01 Civ. 7891; *Kincade*, No. 02—50380. That is, a DNA sample is evidence only of an individual's genetic code, which does not, on its own, show the commission of a crime. See *Steele*, 155 Ohio App. 3d at 671, 802 N.E.2d at 1136; accord *Martinez*, 276 Kan. at 534, 78 P.3d at 773-74 (with this information, "there is no immediate possibility of finding probable cause to support an arrest" and thus, does not detect ordinary criminal wrongdoing). "It is this distinction that removes the collection and cataloging of DNA information from the normal need for law enforcement." *Martinez*, 276 Kan. at 535, 78 P.3d at 774; see *Steele*, 155 Ohio App. 3d at 671, 802 N.E.2d at 1136 (the statutes go beyond the need for law enforcement because they "contribute to the creation of a more accurate criminal justice system" and "help solve future crimes *** unlike any other statute that has ever been before the United States Supreme Court").

Having declared that these statutes meet the threshold requirement of establishing a special need, these courts, in turning to the second part of the test, have also evaluated a defendant's privacy rights against the State's legitimate interests by considering the scope of the intrusion and the manner in which the testing is conducted. See *Martinez*, 276 Kan. at 535, 78 P.3d at 774. We have already conducted this analysis in our disposition of this case and have concluded that

the State's interests prevail. See also *Steele*, 155 Ohio App. 3d at 672, 802 N.E.2d at 1137; *Martinez*, 276 Kan. at 535-37, 78 P.3d at 775; *D.L.C.*, 124 S.W.2d at 373. We add here as further support for our conclusion our recognition that the statute at issue ensures that only appropriately qualified personnel are to perform the DNA extractions, they must be performed in a medically approved procedure, the samples are maintained exclusively by the Illinois Department of State Police, the analysis information obtained is confidential and released only to authorized persons, and our legislature has made it a felony to use any information gleaned from this process in an unauthorized manner. See 730 ILCS 5/5—4—3(d), (e), (f), (f—5) (West 2002). Therefore, even under the special needs test, we find that the statute is constitutional because it provides for a need beyond that of normal law enforcement and the State's substantial interests outweigh those of defendants.

## CONCLUSION

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

TULLY and O'MARA FROSSARD, JJ., concur.