(No. 93511.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ESMON VINCI JONES, Appellant.

*Opinion filed May 22, 2003.—Rehearing denied September 29, 2003.*

124

FITZGERALD, J., specially concurring.
McMORROW, C.J., joined in part by FREEMAN and KIL-BRIDE, JJ., dissenting.
FREEMAN and KILBRIDE, JJ., also dissenting.

Daniel D. Yuhas, Deputy Defender, and Jenifer L. Johnson and Keleigh L. Biggins, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Lawrence R. Fichter, State's Attorney, of Decatur (Joel D. Bertocchi, Solicitor General, and William L. Browers and Lionel W. Weaver, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

The State charged defendant, Esmon Vinci Jones, with three counts of aggravated battery (720 ILCS 5/12—4(a), (b)(8), (b)(10) (West 2000)), one count of robbery (720 ILCS 5/18—1 (West 2000)), and one count of mob action (720 ILCS 5/25—1(a)(1) (West 2000)). A jury acquitted him of aggravated battery, convicted him of mob action, and could not reach a verdict on robbery. The circuit court of Macon County vacated the mob ac-

tion conviction as inconsistent with the aggravated battery acquittals and set the case for retrial on the mob action and robbery counts. The case was assigned to a different trial judge, and defendant moved to bar further prosecution on collateral estoppel grounds. The circuit court denied defendant's motion and ruled that the previous judge had erred in setting aside the mob action conviction because the verdicts were not inconsistent. Defendant appealed, and the appellate court affirmed. No. 4—01—0078 (unpublished order under Supreme Court Rule 23). We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## BACKGROUND

Sixty-four-year-old Patricia Wheeler-Ward testified that, on May 21, 2000, she was walking home from a pub where she had been socializing. She was walking north on Van Dyke street when she noticed three men walking towards her. One of them, who was wearing a grey sweatshirt, separated from the group and said to her, "Know what we want?" Wheeler-Ward responded, "Go on and leave me alone. I'm going home." The man who had spoken to her asked for her purse and tried to take it from her. Wheeler-Ward identified defendant as the person who had tried to take her purse.

Wheeler-Ward began to run away, and someone pushed her from behind. She fell forward on her face and hurt her knee. The man in the gray sweatshirt and one of the others tried to take her purse. The third one went through her pockets and then said, "Shut up bitch!" and hit her in the mouth. The men made off with her purse, and she later recovered it at the police station.

The defense did not deny that defendant was present when Wheeler-Ward was attacked, but denied that he was criminally responsible for the attack. Defendant's attorney impeached Wheeler-Ward with contradictory statements that she gave the police on the night of the

attack. Additionally, defendant testified to his version of the incident in question. According to defendant, he was walking down Van Dyke Street with Demetrius Reed and Anthony Johnson, a/k/a Knockout. The three had met up earlier at an apartment complex. When they were on Van Dyke Street, defendant was on his way home, while the other two were going to a girl's house. At some point, defendant noticed an elderly woman walking towards them on the other side of the street. Reed and Knockout crossed the street and got behind her. They did not tell defendant what they were doing.

Knockout told the woman that they wanted her purse. She began to run, and Knockout shoved her in the back. Defendant claimed that he never touched her. He could see Knockout taking the purse away from her. When defendant saw what Reed and Knockout were doing, he tried to run away. Reed ran after him and tackled him to the ground. Reed had the victim's purse with him. Reed threw items out of the purse until he found the victim's wallet. Knockout caught up with defendant and Reed, and Reed and Knockout made defendant take some of the victim's money. Defendant did not take the money willingly. Reed and Knockout did not want defendant to tell what happened, so they threatened him with an "a-whipping" if he did not take some of the money. Defendant interpreted "a-whipping" as meaning that he would be beaten if he did not take some of the money. Defendant acknowledged that he was wearing a gray sweatshirt on the night in question. He explained that he ran from the police because he did not want to "go down" for something he did not do.

The jury convicted defendant of mob action and acquitted him on all three counts of aggravated battery. The jurors could not reach a verdict on the robbery charge. A few days later, following an oral motion by defendant, the trial court set aside the mob action convic-

tion as inconsistent with the aggravated battery acquittals. The court entered an order stating that the cause was "realloted for pre-trial" on the mob action and robbery counts.

Defendant moved to bar reprosecution, arguing that the State was collaterally estopped from relitigating the issue of whether defendant had used force against the victim. Defendant pointed out that the mob action and aggravated battery counts both alleged that he pushed and struck the victim. The robbery count alleged that he took the victim's purse by the use of force. Defendant argued that, because he was acquitted of pushing and striking the victim, the State was estopped from prosecuting him on the mob action count as it was also based on his pushing and striking the victim. Similarly, the State could not prosecute him for robbery predicated on the use of force because a jury had found that he did not push or strike the victim.

This motion was considered by a different trial judge, who ultimately ruled that the previous judge had erred in vacating the mob action conviction. The second judge found that the verdicts were not inconsistent. Mob action does not require the infliction of injury, and the allegations of infliction of injury in the mob action charge were surplusage. The jury was properly instructed on the essential elements of mob action. The court specifically found that "the verdicts were not legally inconsistent as the jury was instructed and would not have been legally inconsistent if the jury had been instructed with all elements in the information." Accordingly, the court ruled that collateral estoppel did not bar retrial.

Defendant appealed pursuant to Supreme Court Rule 604(f) (188 Ill. 2d R. 604(f)), and the appellate court affirmed. The appellate court agreed with the trial court that the mob action conviction was not inconsistent with the aggravated battery acquittals. The court held that

the essential elements of mob action and aggravated battery were different and that it was not inconsistent for the jury to acquit on one and convict on the other. According to the appellate court, the State would not have to prove on retrial that defendant pushed and struck Wheeler-Ward to obtain a mob action conviction. Although the court found that the first trial judge had erred in vacating the mob action conviction, the court found that it had no authority to reinstate the conviction because the appeal was from the grant of defendant's motion to bar retrial.

As to the robbery charge, the court noted that the elements of robbery and aggravated battery are different. To obtain a conviction on the robbery charge, the State would have to prove that defendant took property from Wheeler-Ward by the use of force. It would not be necessary for the State to relitigate the issue of whether defendant pushed or struck Wheeler-Ward. The testimony showed that Wheeler-Ward's purse was pulled from her by the use of force, and a robbery conviction could stand based on this use of force. Accordingly, collateral estoppel did not bar retrial on the robbery count either.

## ANALYSIS

Defendant argues that the appellate court erred in holding that he could be retried on the mob action and the robbery counts. Defendant broadly asserts that the jury's acquittal on the aggravated battery counts shows that the jurors believed that he was not involved in the incident at all. More specifically, defendant contends that the mob action conviction was inconsistent with the aggravated battery acquittals because the aggravated battery and mob action counts all included allegations that defendant pushed and struck Wheeler-Ward. Considering the evidence before the jurors, their acquittal on the aggravated battery counts could have been based only on their belief that defendant did not push or strike

Wheeler-Ward, and likewise he was not accountable for the actions of whoever did do so. Similarly, defendant contends that the jury's finding in this regard should prevent a retrial on the robbery charge, which would require the jury to find that defendant took property from Wheeler-Ward by the use of force.

The State responds that the mob action conviction was not inconsistent with the aggravated battery acquittals. Alternatively, the State contends that this court should overrule *People v. Klingenberg*, 172 Ill. 2d 270 (1996), in which this court reaffirmed its view that inconsistent verdicts are unreliable and declined to follow the United States Supreme Court's decision in *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984). The State argues that *Powell* supplies the better rule and that this court should follow the approach taken by the Supreme Court. As to the robbery count, the State contends that collateral estoppel does not bar retrial because the jury would not be asked to resolve an issue decided by the previous jury.

## Mob Action

We agree with the State that we erred in *Klingenberg* when we declined to follow *Powell*. We thus do not need to reach the issue of whether the mob action conviction was inconsistent with the aggravated battery acquittal because, either way, the mob action conviction did not need to be vacated. If the verdicts were consistent, then obviously there was no problem. If they were inconsistent, we still believe the mob action conviction could stand under the rule announced by the Supreme Court in *Powell*.

In *Powell*, a jury acquitted the defendant of possessing cocaine with the intent to distribute it and conspiring to possess with intent to distribute cocaine. However, the same jury convicted the defendant of using a telephone to commit those same felonies. The defendant ap-

pealed, arguing that the verdicts were inconsistent: if she did not commit the underlying felonies, she could not have been guilty of using a telephone to commit those same felonies. The United States Court of Appeals for the Ninth Circuit agreed and reversed the defendant's convictions. The Court of Appeals acknowledged that the Supreme Court had held in *Dunn v. United States*, 284 U.S. 390, 76 L. Ed. 356, 52 S. Ct. 189 (1932), that inconsistent verdicts need not be set aside, but held that there should be an exception for situations in which a jury convicts a defendant of a compound offense while acquitting him of the predicate offense.

The Supreme Court reversed the Ninth Circuit and held that there was no such exception to the *Dunn* rule. The Court reiterated that consistency in the verdicts is not required as a matter of constitutional law and that inconsistent verdicts can often be explained as a product of juror lenity:

> " ' "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." ' " *Powell*, 469 U.S. at 63, 83 L. Ed. 2d at 467, 105 S. Ct. at 475, quoting *Dunn*, 284 U.S. at 393, 76 L. Ed. at 359, 52 S. Ct. at 190, quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925).

The Court gave three additional reasons for refusing to allow defendants to challenge convictions on the basis of inconsistency. First, when a jury enters inconsistent verdicts, no one knows who the error benefits. Or, as the court put it, "it is unclear whose ox has been gored." *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477. All that a reviewing court knows is that either in the conviction or the acquittal the jury did not follow the instructions. Second, the court was concerned with

fashioning a rule that would allow only the defendant to challenge an inconsistent verdict. Even though the inconsistency could harm either side, the government is precluded from challenging an acquittal on inconsistency grounds. *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477. Finally, a defendant is still protected from jury irrationality because the defendant can always challenge his or her conviction on sufficiency of the evidence grounds. *Powell*, 469 U.S. at 67, 83 L. Ed. 2d at 470, 105 S. Ct. at 478.

The *Powell* Court noted that it was not grounding its decision in the Constitution. Rather, the issue was addressed under the court's supervisory power over the federal criminal process, and the decision is thus not binding on state courts. *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477. Although the states are not required to apply the *Powell* rule, most have chosen to do so. See 5 W. LaFave, J. Israel & N. King, Criminal Procedure § 24.10(b), at 616 (2d ed. 1999).

In *Klingenberg*, this court expressly declined to join the federal courts and the majority of state courts in following *Powell*. In that case, we agreed with the appellate court that the defendant's conviction of official misconduct was legally inconsistent with a verdict acquitting him of theft when the charge of official misconduct was based on the same theft. *Klingenberg*, 172 Ill. 2d at 276-77. The State relied on *Powell* in arguing that the defendant's official misconduct conviction did not have to be reversed.

*Klingenberg* conceded that this court's previous rationale for vacating inconsistent verdicts was incorrect. This court had held previously that inconsistent verdicts rendered in the same proceeding had to be vacated on collateral estoppel grounds. *People v. Frias*, 99 Ill. 2d 193 (1983). In *Klingenberg*, this court acknowledged that this rationale was incorrect and that the purpose of the col-

lateral estoppel doctrine is "to protect an accused from the unfairness of being required to *relitigate* an issue which has once been determined in his favor by a verdict of acquittal in a *second proceeding.*" (Emphases in original.) *Klingenberg*, 172 Ill. 2d at 281.

Although this court acknowledged that its previous rationale for vacating inconsistent verdicts was incorrect, this court nevertheless declined to adopt the United States Supreme Court's approach to inconsistent verdicts for three new reasons. First, this court stated that jury verdicts can be explained away as a showing of jury lenity only in those cases in which the jury convicts on the predicate offense but acquits on a compound offense. *Klingenberg*, 172 Ill. 2d at 278. Second, the court acknowledged *Powell*'s concern that the defendant but not the State would be able to challenge an inconsistent verdict, but stated that we were not "persuaded that the framers of the double jeopardy clause intended to achieve the symmetry between defendants and the prosecution that the *Powell* decision creates." *Klingenberg*, 172 Ill. 2d at 279. Finally, this court said that it did not want to permit legally inconsistent verdicts as a means of achieving "folk justice," and that the defendant should not be required to bear the burden of the trial court's error in accepting the verdicts. *Klingenberg*, 172 Ill. 2d at 279.

*Klingenberg* was not unanimous. Two justices dissented and urged this court to stop adhering to "an outmoded and unnecessary state rule" and to follow *Powell*. *Klingenberg*, 172 Ill. 2d at 285-89 (Miller, J., dissenting, joined by Freeman, J.). These justices argued that the *Powell* rule was preferable and asserted that the majority's reasons for failing to follow it were not persuasive. First, the dissent argued that the majority was mistaken in contending that juror lenity could be assumed only in those cases in which the jury convicts on the predicate offense and acquits on a compound offense.

The dissent contended that the majority erred in looking for a rational explanation for juror lenity because lenity does not necessarily operate in a rational manner. *Klingenberg*, 172 Ill. 2d at 287 (Miller, J., dissenting, joined by Freeman, J.). Second, the dissent argued that the majority too easily dismissed the Supreme Court's concern that the defendant could challenge an inconsistent verdict while the State could not. The dissenting justices argued that the *Powell* Court's concern was not necessarily a desire to see perfect symmetry, as the majority contended, but rather was based on the reality that there is no reason to assume that the acquittal is the "correct" verdict. *Klingenberg*, 172 Ill. 2d at 287-88 (Miller, J., dissenting, joined by Freeman, J.). Third, the dissent argued that the majority ignored the fact that a defendant always remains free to challenge his conviction on sufficiency of the evidence grounds. *Klingenberg*, 172 Ill. 2d at 288 (Miller, J., dissenting, joined by Freeman, J.). Finally, the dissenting justices argued that the majority's assertion that the defendant should not bear the burden of the trial court's inaction in accepting a legally inconsistent verdict rested on the faulty assumption that the acquittal was the jury's true verdict. According to the dissent, in these situations it is just as likely that the acquittal is a boon given to the defendant by a jury convinced of his guilt. *Klingenberg*, 172 Ill. 2d at 288 (Miller, J., dissenting, joined by Freeman, J.).

We have concluded that the views expressed by Justices Miller and Freeman in their *Klingenberg* dissent were correct and should have been followed. We are further persuaded by the reasons set forth in *Powell* as to why inconsistent verdicts in criminal cases should not be vacated, and we now overrule *Klingenberg*. This will bring Illinois in line with the majority of states that have concluded that the *Powell* decision is correct and should be followed. Thus, defendants in Illinois can no longer

challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges.

We recognize that we are departing from *stare decisis* in changing our approach to inconsistent verdicts. Normally, we will adhere to established precedent, even if certain members of this court disagree with it. *Stare decisis*, however, "is not an inexorable command; rather, it 'is a principle of policy and not a mechanical formula of adherence to the latest decision.' " *Payne v. Tennessee*, 501 U.S. 808, 828, 115 L. Ed. 2d 720, 737, 111 S. Ct. 2597, 2609-10 (1991), quoting *Helvering v. Hallock*, 309 U.S. 106, 119, 84 L. Ed. 604, 612, 60 S. Ct. 444, 451 (1940). In *Payne*, the Supreme Court further explained that:

> "Adhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.' [Citation.] Nevertheless, when governing decisions are unworkable or are badly reasoned, 'this Court has never felt constrained to follow precedent.' [Citation.]" *Payne*, 501 U.S. at 827, 115 L. Ed. 2d at 737, 111 S. Ct. at 2609.

Upon reexamining our decision in *Klingenberg*, we have determined that one of the reasons we gave for rejecting *Powell* was based on a fundamental misstatement of the law. Because we have determined that this particular reason for rejecting *Powell* was not valid, we have reevaluated the arguments for and against the *Powell* and *Klingenberg* approaches.

As stated, this court's original objection to inconsistent verdicts was based on collateral estoppel grounds. Once we determined that we had erred in applying collateral estoppel to verdicts rendered in a single proceeding, we decided to reject *Powell* for three new reasons. One of the reasons this court rejected the *Powell* approach was because this court believed that it forced defendants to bear the burden of a trial judge's error:

> "The *Powell* decision requires the defendant to bear the

consequences of an error properly attributed to the trial court. Where a jury returns legally inconsistent verdicts, it is the trial court's duty to refuse the verdicts and to require the jury to deliberate further. *People v. Almo*, 108 Ill. 2d 54 (1985). In this case, however, the trial court entered the inconsistent verdicts, presumably because it failed to recognize the inconsistency. We do not believe that the defendant should suffer the consequences of the trial court's error, particularly where an unlawful conviction may have resulted from that error." *Klingenberg*, 172 Ill. 2d at 279.

This assertion by the *Klingenberg* court confused two different lines of cases. The rule that a trial judge has a duty to refuse inconsistent verdicts and should order the jury to keep deliberating is the rule for cases in which the jury returns inconsistent *guilty* verdicts. For instance, this is the situation that would arise when the defendant is found guilty of two crimes, but the jury found that the defendant acted with two different mental states. In *Almo*, the case cited by *Klingenberg*, this court held that a trial judge acted properly in sending a jury back to deliberate further after it found the defendant guilty of both murder and voluntary manslaughter. This court held that the trial judge had a duty to refuse the verdicts and to send the jury back to deliberate because the judge would not know which of the two verdicts to enter. The judge could not usurp the jury's function by second-guessing what the jury really meant. *People v. Almo*, 108 Ill. 2d 54, 64 (1985). See also *People v. Fornear*, 176 Ill. 2d 523, 534 (1997); *People v. Porter*, 168 Ill. 2d 201, 214 (1995); *People v. Flowers*, 138 Ill. 2d 218, 229-31 (1990); *People v. Spears*, 112 Ill. 2d 396, 409-10 (1986) (all holding that a trial court has a duty to refuse inconsistent *guilty* verdicts and to instruct the jury to resolve the inconsistency).

The inconsistencies at issue in *Powell* and *Klingenberg* are different. Those cases involve situations in which a jury's *conviction* of the defendant on one count is

inconsistent with its *acquittal* of him on another count because the jury found that the same essential element both did and did not exist. This court has never held that a trial judge has a duty in these situations to send the jury back for further deliberations. We have asked only that the trial courts ask jurors to reconcile inconsistent *guilty* verdicts. Indeed, requiring trial judges to order jurors to reconsider verdicts of *acquittal* would raise questions of due process and double jeopardy that this court has not yet addressed. Thus, contrary to *Klingenberg*'s assertion, *Powell* in no way requires defendants to bear the consequences of a trial court error.

Because one of the principal reasons given by the *Klingenberg* court for rejecting *Powell* was based on a fundamental misstatement of the law, we have reexamined whether *Klingenberg* still supplies the better approach or whether we should join the majority of jurisdictions in following *Powell*. As stated previously, our reexamination of the issue leads us to conclude that the reasons given by *Powell* and by the *Klingenberg* dissent were correct and should have been followed.

Having determined that the trial court erred in vacating defendant's mob action conviction, we must now consider the appropriate remedy. The State asks that we reinstate the conviction. Although the appellate court believed that the trial court had erred in vacating the mob action conviction, it concluded that it had no authority to reinstate the conviction because it arose in the context of an interlocutory appeal from the denial of defendant's motion to bar reprosecution. This is not correct.

Upon determining that the first trial judge erred in vacating defendant's mob action conviction and setting the case for retrial, both the subsequent trial judge and the appellate court had the authority to reinstate the conviction. The first judge's order vacating the convic-

tion and setting the cause for a retrial was an interlocutory order. See *People v. Mink*, 141 Ill. 2d 163, 171 (1990). A court in a criminal case has the inherent power to reconsider and correct its rulings, and this power extends to interlocutory rulings as well as to final judgments. *Mink*, 141 Ill. 2d at 171. Here, after the matter was set for retrial, the circuit court retained jurisdiction over the cause and thus had the authority to reconsider any order that had previously been entered. See *Mink*, 141 Ill. 2d at 171 (second trial judge had the authority to vacate first trial judge's order, which granted defendant a new trial, and to reinstate the conviction). Thus, upon ruling that the previous judge had erred in vacating the conviction on inconsistency grounds, the new judge should have reinstated the conviction.

Likewise, the appellate court had the authority to reinstate the conviction. Although agreeing that the first trial judge had erred in vacating the conviction, the appellate court concluded that it had no authority to reinstate it because the case was on appeal from the order of the circuit court denying defendant's motion to bar retrial. However, the circuit court's ruling that the previous trial judge had erred in vacating the conviction formed the basis for its decision to deny defendant's motion to bar reprosecution. In response to defendant's motion to bar reprosecution, the subsequent trial judge entered an order in which he specifically ruled that the previous judge had erred in setting aside the mob action conviction because it was not inconsistent with the aggravated battery acquittals. Because there was no inconsistency, the judge ruled that defendant could be prosecuted again for mob action. These were not separate and distinct rulings on different issues. There was only one issue before the trial court, and the order resolving this issue was the one under review. The appellate court had the authority to reverse, affirm, or modify this order.

134 Ill. 2d R. 615(b)(1). Because the appellate court agreed with the trial court's order that stated that the previous judge had erred in vacating the conviction, the court could have modified that order to reinstate the mob action conviction, which is the action the circuit court should have taken.

Further, the previous judge's order was brought up for review by the defendant's appeal from the order denying his motion to bar reprosecution. This court held in *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 434-35 (1979), that a notice of appeal brings up for review unspecified orders and judgments that were a step in the procedural progression leading to the judgment or order specified in the notice of appeal. The first judge's ruling was a step in the procedural progression leading to the subsequent judge's ruling denying defendant's motion to bar reprosecution. The trial court's erroneous action in vacating the mob action conviction caused defendant to file the motion to bar reprosecution. Thus, the first trial judge's order was reviewable as a step in the procedural progression leading to the denial of defendant's motion.

Both the circuit court and the appellate court had the authority to reinstate defendant's conviction upon determining that the trial court had erred in vacating it. For the reasons stated above, we agree with the lower courts that defendant's mob action conviction was improperly vacated. We thus reinstate defendant's conviction for mob action.

## Robbery

We next address whether defendant can be retried for robbery after the jury could not reach a verdict on that count. Defendant contends that his acquittal of aggravated battery collaterally estops the State from reprosecuting him for robbery.

Under the collateral estoppel doctrine, "when an issue of ultimate fact has once been determined by a valid

and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194 (1970). The party seeking to invoke collateral estoppel must show that: (1) the issue was raised and litigated in a previous proceeding; (2) that the determination of the issue was a critical and necessary part of the final judgment in a prior trial; and (3) the issue sought to be precluded in a later trial is the same one decided in the previous trial. *People v. Daniels*, 187 Ill. 2d 301, 321 (1999). Where a defendant claims that a previous acquittal bars a subsequent prosecution for a related offense, the collateral estoppel rule requires a court to examine the record of the prior proceeding and determine whether a rational jury could have grounded its verdict on an issue other than the one which the defendant seeks to foreclose from consideration. *Ashe*, 397 U.S. at 444, 25 L. Ed. 2d at 475-76, 90 S. Ct. at 1194.

Defendant contends that his case is "directly analogous" to *Ashe*. We disagree. In *Ashe*, six men playing poker were robbed by three or four masked men. The defendant was charged with six counts of robbery—one count for each of the victims. Defendant went to trial on one of the counts and was acquitted. The State then sought to try defendant on one of the robbery counts relating to one of the other victims. *Ashe*, 397 U.S. at 437-39, 25 L. Ed. 2d at 472-73, 90 S. Ct. at 1191-92. The Supreme Court held that the State was barred from pursuing this prosecution on collateral estoppel grounds. The court examined the record in the previous proceeding and determined that the jury could not rationally have found that no robbery occurred or that the named victim was not in fact a victim of that robbery. The only possible basis for the jury's acquittal was that there was not sufficient evidence that defendant participated in the robbery. Thus, collateral estoppel would preclude pros-

ecuting defendant for one of the other counts because another jury would be asked to decide if defendant participated in the robbery. *Ashe*, 397 U.S. at 445, 25 L. Ed. 2d at 476, 90 S. Ct. at 1195.

Defendant contends that his case is directly analogous to *Ashe* because "the jury's acquittals of the defendant on the aggravated battery counts equate to a finding that he was not a participant in this incident." This is obviously false and fails to consider that the jury's conviction of him for mob action shows that the jury believed that he was involved.

Further, as the State correctly notes, all that the aggravated battery acquittals show is that the jury concluded that neither defendant nor one for whose conduct defendant was legally accountable pushed or struck Wheeler-Ward with the intent to commit bodily harm or the knowledge that it would cause bodily harm. A retrial for robbery would ask the jury to consider whether defendant took property from Wheeler-Ward by the use of force or threatening the imminent use of force, both of which can be accomplished without defendant actually pushing or striking Wheeler-Ward.

Indeed, as the appellate court properly noted, Wheeler-Ward testified that her purse was pulled from her. She did not give her purse to the robbers when they asked for it. She testified that one of them grabbed at her purse and failed to get it off her arm, following which one of the others pulled it away from her. A jury could find defendant guilty of robbery if it found that he forcibly pulled her purse away from her. A jury would not have to relitigate whether defendant pushed or struck Wheeler-Ward. Accordingly, defendant can be retried for robbery.

## CONCLUSION

For the reasons stated, we vacate those portions of the appellate court and circuit court orders that reset the

mob action count for retrial, and we reinstate defendant's mob action conviction. We affirm the appellate court's holding that collateral estoppel does not bar retrial on the robbery count, and we remand the cause for further proceedings.

*Appellate court affirmed in part and vacated in part; circuit court affirmed in part and vacated in part; cause remanded.*

JUSTICE FITZGERALD, specially concurring:

This court has long held that we will depart from the doctrine of *stare decisis* upon a showing of "good cause." *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 167 (1955). This is true because "[t]he doctrine of *stare decisis* is a basic tenet of our legal system" which promotes the consistent development of the law. *Wakulich v. Mraz*, 203 Ill. 2d 223, 230 (2003), citing *Hoffman v. Lehnhausen*, 48 Ill. 2d 323, 329 (1971). I write separately today because I believe that good cause exists, in addition to that identified by the majority, which compels this court to revisit the issue presented in this case.

In *People v. Klingenberg*, 172 Ill. 2d 270 (1996), we examined whether the defendant's acquittal of theft over $300 was legally inconsistent with his conviction of official misconduct. *Klingenberg*, 172 Ill. 2d at 274. As a first step in resolving that issue, it is apparent that this court determined whether the charge of theft over $300 was a lesser-included offense of official misconduct. The opinion examined the crimes as defined by statute (*Klingenberg*, 172 Ill. 2d at 275), as charged in the indictment (*Klingenberg*, 172 Ill. 2d at 276), and also as argued by the State at trial and set forth in the jury instructions (*Klingenberg*, 172 Ill. 2d at 276) to ascertain whether theft over $300 was included within official misconduct. Ultimately, we held that the trial court's reconciliation of the verdicts, including its finding that theft over $300

was not a lesser-included offense to official misconduct, was "belied by the record" and the charging instrument. *Klingenberg*, 172 Ill. 2d at 275-76.

Importantly, I observe that the lesser-included offense analysis we applied was inconsistent with our case law present at that time. Specifically, two years before we decided *Klingenberg*, we expressed our preference for the charging instrument approach to determine whether a particular offense is a lesser-included offense of another. *People v. Novak*, 163 Ill. 2d 93 (1994). *Novak* did not "first adopt" or create the charging instrument approach (*People v. Hamilton*, 179 Ill. 2d 319, 326-27 (1997)), but rather created uniformity by implicitly rejecting other methods employed at the time. Before *Novak*, trial courts applied one of several methods to examine whether charged offenses were comprised of lesser-included offenses. In most instances, trial courts compared the abstract statutory definitions of the crimes, otherwise called the "abstract elements" approach, or examined the facts adduced at trial, otherwise called the "inherent relationship" approach. *People v. Bryant*, 113 Ill. 2d 497, 503 (1986); *People v. Mays*, 91 Ill. 2d 251, 255 (1982). However, in *Klingenberg*, despite our holding in *Novak*, this court clearly applied an unusual combination of approaches to examine the lesser-included issue.

This combined approach demonstrates a confusion that was not limited to this court. In *Novak*, this court's stated preference for the charging instrument approach fundamentally altered the method followed by both trial and appellate courts to determine the existence of lesser-included offenses. However, because we did not expressly rule that courts were required to follow the charging instrument approach, courts were slow to correctly apply the charging instrument approach. See, *e.g.*, *Hamilton*, 179 Ill. 2d at 323. As a result, the full impact of the charging instrument approach was unknown at the time this court decided *Klingenberg*.

Today, we better understand the impact. The charging instrument approach is a flexible approach that permits courts to recognize the existence of a lesser-included offense even if the charging instrument does not expressly allege all of the elements of the lesser crime, but only implies the elements. *Novak*, 163 Ill. 2d at 107; *Hamilton*, 179 Ill. 2d at 325. Put another way, the lesser crime need only relate to the greater to the extent that the charging instrument describes the lesser. *Novak*, 163 Ill. 2d at 107. This is a significant departure from the earlier essential elements approach. Under the essential elements approach, trial courts only examined the language of the statute. Therefore, absent a change in the language of the statute it was theoretically possible to identify in finite terms the total number of existing lesser-included offenses included within the criminal code. Conversely, the charging instrument approach removes any limitation on the potential number of lesser-included offenses. Illinois jurisprudence, in the years following *Klingenberg*, illustrates that the charging instrument approach has opened the door to the possibility of a greater number of lesser-included offenses. Under the charging instrument approach, depending upon the language in the charging instrument, theft may be a lesser-included offense of residential burglary (*People v. Hamilton*, 179 Ill. 2d 319 (1997); *People v. Monroe*, 294 Ill. App. 3d 697 (1998)), unlawful restraint may be a lesser-included offense of home invasion (*People v. Baldwin*, 199 Ill. 2d at 10-11), and arson may be a lesser-included offense of burglary (*People v. Oparah*, 318 Ill. App. 3d 886 (2001)). Under the essential elements approach, theft, unlawful restraint, and arson are not, and would never be, lesser-included offenses of residential burglary, home invasion, and burglary, respectively. We recently recognized the wide breadth of possible lesser-included offenses as a result of the charging instrument

approach in *People v. Baldwin*, 199 Ill. 2d 1 (2002). In *Baldwin*, we held that the facts alleged in the charging instrument did not set forth sufficient facts to support the allegation that aggravated unlawful restraint was a lesser-included offense of home invasion. *Baldwin*, 199 Ill. 2d at 10-11. However, we also stated:

> "That is not to say that these crimes [aggravated unlawful restraint, aggravated kidnapping, armed robbery, aggravated criminal sexual assault, or aggravated criminal sexual abuse] could never constitute lesser-included offenses of home invasion. To the contrary, they could, depending on the context of the allegations contained in the charging instrument." *Baldwin*, 199 Ill. 2d at 10-11.

This change in how courts evaluate the existence of lesser-included offenses is important to the issue we discuss today—the issue of legally inconsistent verdicts. Specifically, any discussion of legal inconsistencies also involves a discussion of lesser-included offenses, and therefore, it is important to recognize the impact of the charging instrument approach. Legally inconsistent verdicts necessarily involve a lesser-included offense because legally inconsistent verdicts by definition involve acquittal on the predicate offense and conviction on the compound offense. *People v. Frias*, 99 Ill. 2d 193 (1983). In order to ascertain the existence of a predicate and compound offense, courts must evaluate the existence of a lesser-included offense using the appropriate lesser-included analysis. Therefore, a finding of a lesser-included offense may be the first step to discussing the issue of legally inconsistent verdicts. See *Frias*, 99 Ill. 2d at 198. Accordingly, because the charging instrument approach opened the door to the possibility of a greater number of lesser-included offenses, it also opened the door to a greater number of verdict challenges based upon a purported legal inconsistency.

It was imperative for this court to consider this impact at the time we decided *Klingenberg*. This is true

because when we decided *Klingenberg*, and declined to follow *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984), our decision was based in large part upon our examination of verdicts and the manner in which legal inconsistencies develop. As noted, lesser-included offenses are an inherent part of legal inconsistencies; therefore, our examination of the issue was based upon incomplete information. The insight we now have, due in part to time, compels that we revisit *Klingenberg*.

Additionally, I believe our current awareness that the charging instrument approach has opened the door to a greater number of lesser-included offenses, and consequently opened the door to a greater number of verdict challenges based upon a purported legal inconsistency, compels us to reverse our position in *Klingenberg* and follow *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984). It is more likely true that these purported legal inconsistencies are correlated to the change in how we analyze lesser-included offenses, rather than a reflection of juror confusion or arbitrariness.

CHIEF JUSTICE McMORROW, dissenting:

In *People v. Klingenberg*, 172 Ill. 2d 270 (1996), this court reaffirmed a rule that has been the law of this state since at least 1983: "where a jury returns legally inconsistent verdicts acquitting a defendant of one offense and convicting him of another, the conviction must be reversed." *Klingenberg*, 172 Ill. 2d at 277, citing *People v. Frias*, 99 Ill. 2d 193 (1983). In so holding, the *Klingenberg* court expressly rejected the United States Supreme Court's decision in *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984), which holds that verdicts need not be consistent. Today the majority overrules *Klingenberg* and reverses a rule of law that has been adhered to for two decades and adopts in its place

*Powell.* Because the majority offers no principled basis for this departure from prior precedent, I disagree with the majority's decision, and therefore respectfully dissent.

The allegedly inconsistent verdicts in the case at bar consisted of defendant's conviction for mob action, on the one hand, and his acquittals on charges of aggravated battery, on the other. The original trial court judge vacated the mob action conviction, finding that it was inconsistent with the acquittals for aggravated battery, and he set the mob action charge for retrial. Defendant's motion to bar reprosecution was denied by a different trial court judge, who found no inconsistency between defendant's acquittals and his conviction. The original order setting the mob action charge for retrial was allowed to stand. A divided appellate court affirmed the circuit court's finding that defendant's conviction and acquittals were legally consistent. However, the appellate court concluded that it lacked authority to reinstate the mob action conviction, which was left for retrial. Defendant appealed.

Before this court, defendant argues, *inter alia*, that his conviction for mob action is legally inconsistent with his acquittals for aggravated battery, and the mob action conviction should not be reinstated. The majority, however, concludes that it does not matter whether the conviction and the acquittals are legally consistent. The majority overrules *Klingenberg* and adopts the rule in *Powell* that legally inconsistent verdicts should be shielded from review.

## I. *KLINGENBERG* AND *POWELL*

In *Powell,* as in *Klingenberg*, the defendant was convicted of a compound offense but was acquitted of the predicate offense upon which the compound offense was based. The defendant in *Powell* was found not guilty of the predicate offenses of possessing cocaine with the

intent to distribute and of conspiring to possess cocaine with the intent to distribute, but was found guilty of the compound offense of using a telephone to commit these same felonies. The Court in *Powell* did not dispute that these verdicts were inconsistent. Instead, pointing to *Dunn v. United States*, 284 U.S. 390, 76 L. Ed. 356, 52 S. Ct. 189 (1932), the Court reaffirmed the holding in *Dunn* that " '[c]onsistency in the verdict is not necessary.' " *Powell*, 469 U.S. at 62, 83 L. Ed. 2d at 467, 105 S. Ct. at 475, quoting *Dunn*, 284 U.S. at 393, 76 L. Ed. at 358, 52 S. Ct. at 190.

The Court in *Powell* acknowledged that, in support of this holding, the Court in *Dunn* made a statement about *res judicata* that "can no longer be accepted." *Powell*, 469 U.S. at 64, 83 L. Ed. 2d at 468, 105 S. Ct. at 476. However, the Court in *Powell* nonetheless reaffirmed *Dunn*. The Court stated:

> "We believe that the *Dunn* rule rests on a sound rationale that is independent of its theories of res judicata, and that it therefore survives an attack based upon its presently erroneous reliance on such theories." *Powell*, 469 U.S. at 64, 83 L. Ed. 2d at 468, 105 S. Ct. at 476.

The Court in *Powell* then explained this independent rationale.

According to *Powell*, the inevitable uncertainty that is inherent in inconsistent verdicts argues in favor of leaving them intact. When a court of review is faced with inconsistent verdicts, the court is necessarily uncertain whether the error lies in the acquittal or the conviction. If the error lies in the acquittal, the jury's "true" verdict was the conviction, and it is the State that is harmed by the inconsistent verdicts. Conversely, if the true verdict was the acquittal, then it is the conviction that was in error, and the defendant is the one harmed by the inconsistent verdicts. Because of this uncertainty as to "whose ox has been gored" (*Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477), *Powell* concludes that the best course is simply to leave the verdicts untouched.

In support of this conclusion, the Court in *Powell* suggests that the error in inconsistent verdicts usually lies in the acquittal rather than the conviction, *i.e.*, it is the State that is usually harmed. Citing *Dunn*, the Court asserts that "such inconsistencies often are a product of jury lenity." *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469, 105 S. Ct. at 477. In other words, an inconsistent acquittal often represents the jury's attempt to be merciful. Under this view, the jury's true verdict was the conviction, but the jury apparently believed that this conviction was punishment enough. As the Court stated in *Dunn*:

" 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " *Dunn*, 284 U.S. at 393, 76 L. Ed. at 359, 52 S. Ct. at 190 (quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925), and quoted with approval in *Powell*, 469 U.S. at 63, 83 L. Ed. 2d at 467, 105 S. Ct. at 475).

In further support of shielding inconsistent verdicts from review, *Powell* asserted that it would be unfair to the State if such verdicts were reviewable. According to *Powell*, if a defendant were allowed to challenge a legally inconsistent conviction, this would leave the State at a disadvantage because the State is barred by the double jeopardy clause from challenging an acquittal. Because of this imbalance in favor of the defendant, *Powell* concluded that, in fairness, neither side should be allowed to challenge inconsistent verdicts.

Finally, *Powell* explained that, even though a defendant may not challenge legally inconsistent verdicts, he still is afforded a measure of protection against the jury irrationality or error that is inherent in such verdicts. The defendant may always challenge his conviction on sufficiency-of-the-evidence grounds. According to *Powell*,

such sufficiency-of-the-evidence review is protection enough, even where the verdicts are legally inconsistent. "We do not believe that further safeguards against jury irrationality are necessary." *Powell*, 469 U.S. at 67, 83 L. Ed. 2d at 470, 105 S. Ct. at 478.

In *Klingenberg*, as in the case at bar, the State argued that this court should adopt the approach set forth in *Powell*. However, in *Klingenberg* this court rejected every argument put forth in *Powell* for shielding inconsistent verdicts from review. Instead of following *Powell*, *Klingenberg* reaffirmed the rule from *People v. Frias* that "where a jury returns legally inconsistent verdicts acquitting a defendant of one offense and convicting him of another, the conviction must be reversed." *Klingenberg*, 172 Ill. 2d at 277, citing *Frias*, 99 Ill. 2d 193.

Explaining our rejection of *Powell*, this court in *Klingenberg* specifically objected to *Powell*'s assumption that the error in inconsistent verdicts "would generally lie in the acquittal alone, rather than in the conviction." *Klingenberg*, 172 Ill. 2d at 278. Responding to this assumption, the *Klingenberg* court stated: "we cannot simply presume that the jury recognized the defendant's guilt and chose to be merciful, where it is equally possible that the jury, through mistake or error, convicted an innocent defendant." *Klingenberg*, 172 Ill. 2d at 278.

According to *Klingenberg*, if it could be said with assurance that inconsistent acquittals always arose from jury lenity, then perhaps it would be acceptable to leave inconsistent verdicts untouched. However, as the Court in *Powell* conceded (see *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 468, 105 S. Ct. at 476), it is equally possible that an inconsistent acquittal did not arise from jury lenity but instead represented the jury's true verdict. In such a case, the error would lie in the conviction rather than the acquittal, and the jury, "through mistake or error, [would have] convicted an innocent defendant." *Klingenberg*, 172 Ill. 2d at 278.

*Klingenberg* also took issue with *Powell*'s argument that it would be unfair to the State to allow review of inconsistent verdicts. According to *Powell*, because the double jeopardy clause bars the State from challenging an inconsistent acquittal, a defendant should also be prohibited from challenging an inconsistent conviction. In response to this contention, this court in *Klingenberg* stated: "We are not persuaded that the framers of the double jeopardy clause intended to achieve the symmetry between defendants and the prosecution that the *Powell* decision creates." *Klingenberg*, 172 Ill. 2d at 279; see also E. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 Harv. L. Rev. 772, 806 (1998) ("The Double Jeopardy Clause, like the other criminal protections in the Bill of Rights, quite obviously benefits the criminal defendant. That was its purpose. If the Double Jeopardy Clause creates an imbalance favoring the criminal defendant on appeal, perhaps the Court should treat this disadvantage to the government as a constitutionally designed cost of being the government").

A similar view is expressed in an article cited by the majority in *Klingenberg*. The author summarizes *Powell*'s fairness argument as follows:

"In other words, although a defendant's conviction might be erroneous, he or she may not challenge it because the framers of the Constitution afforded him or her the protection of the Double Jeopardy Clause (thereby precluding the Government from challenging the defendant's possibly erroneous acquittal). Seeking a symmetry that the framers of the Double Jeopardy Clause failed to provide, the Supreme Court hammered the defendant's shield into the prosecutor's sword. Partly because of her constitutional privilege, the defendant in *Powell* went to prison; without it, she might have been free." A. Alschuler, *The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U. Chi. L. Rev. 153, 213 (1989).

In *Klingenberg*'s view, *Powell* gives too little consider-

ation to the possibility that a jury that renders inconsistent verdicts might be convicting an innocent defendant, rather than simply granting the defendant a merciful acquittal on some charges. Conversely, the Court in *Powell* is overly concerned that the State might be at an unfair disadvantage because the double jeopardy clause bars it from challenging a possibly erroneous acquittal. *Klingenberg* concludes that it is extremely doubtful that the symmetry the *Powell* decision creates between defendants and the State was intended by the framers of the double jeopardy clause. *Klingenberg*, 172 Ill. 2d at 279; 56 U. Chi. L. Rev. at 213; 111 Harv. L. Rev. at 806; see also *Green v. United States*, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223 (1957) ("The underlying idea [of the constitutional protection against double jeopardy], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, *as well as enhancing the possibility that even though innocent he may be found guilty*" (emphasis added)), quoted with approval in 111 Harv. L. Rev. at 806 n.186.

Having rejected the rule in *Powell* regarding inconsistent verdicts, *Klingenberg* articulated the rationale underlying the opposite rule, which *Klingenberg* asserts is based on "common sense and sound logic." *Klingenberg*, 172 Ill. 2d at 281.

> "Legally inconsistent verdicts cannot stand because they are unreliable. At a minimum, such verdicts suggest confusion or misunderstanding on the part of the jury. Legally inconsistent verdicts are particularly unreliable in cases such as this, where the jury acquits a defendant of a predicate offense and convicts of the compound offense. In such a case, the former verdict necessarily suggests that

the evidence failed to establish an essential element of the compound offense. At the very least, the inconsistency constitutes evidence of arbitrariness that undermines confidence in the quality of the jury's conclusion. We can have no confidence in a judgment convicting the defendant of one crime when the jury, by its acquittal on another crime, has rejected an essential element needed to support the conviction. In such circumstances, the conviction, as a matter of law, cannot stand." *Klingenberg*, 172 Ill. 2d at 281-82.

## II. *STARE DECISIS*

In the case at bar, the State argues that we should overrule *Klingenberg* and adopt *Powell* in its place. As Justice Kilbride notes, the majority addresses this argument without ever resolving the narrower issue of whether the verdicts are legally inconsistent. I agree with Justice Kilbride that the legal inconsistency question should have been decided first. If the majority had concluded, as did the appellate court below, that the verdicts were consistent, there would have been no need to address the State's alternative and more far-reaching contention that *Klingenberg* should be overruled.

The State's argument that we should overrule *Klingenberg* necessarily implicates the doctrine of *stare decisis*. "The doctrine of *stare decisis* 'proceeds from the first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike.' " *People v. Tisdel*, 201 Ill. 2d 210, 228 (2002) (McMorrow, J., dissenting, joined by Freeman and Kilbride, JJ.), quoting 5 Am. Jur. 2d *Appellate Review* § 599 (1995); see also *People v. Mitchell*, 189 Ill. 2d 312, 363 (2000) (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.) (" ' "precedents and rules must be followed, unless flatly absurd or unjust" ' "), quoting J. Stein, *The Hobgoblin Doctrine: Identifying "Foolish" Consistency in the Law*, 29 Tex. Tech. L. Rev. 1017, 1019 (1998), quoting 1 W. Blackstone, Commentaries *70. "The doctrine of

*stare decisis* is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. *Stare decisis* permits society to presume that fundamental principles are established in the law rather than in the proclivities of individuals." *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994); see also *Wakulich v. Mraz*, 203 Ill. 2d 223, 230 (2003) ("The doctrine promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' *Payne v. Tennessee*, 501 U.S. 808, 827, 115 L. Ed. 2d 720, 737, 111 S. Ct. 2597, 2609 (1991)"). It is well established that prior precedent should be overruled "only on the showing of good cause" (*Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 167 (1955)) and only where there are "compelling reasons" for the departure (*People v. Robinson*, 187 Ill. 2d 461, 463-64 (1999)). This court has recognized that it will not depart from prior precedent " 'merely because the court is of the opinion that it might decide otherwise were the question a new one.' " *Robinson*, 187 Ill. 2d at 464, quoting *Maki v. Frelk*, 40 Ill. 2d 193, 196-97 (1968), citing *Prall v. Burckhartt*, 299 Ill. 19 (1921).

In the case at bar, the arguments advanced by the State in support of *Powell* are no different from the arguments that were rejected in *Klingenberg*. The State presents nothing to indicate that in the seven years since *Klingenberg* was decided, the decision has become unworkable, nor does the State present any other reason for ignoring *stare decisis*. Indeed, though the State urges us to overrule *Klingenberg*, it makes no mention of the doctrine of *stare decisis* whatsoever.

This court has recently held that where the grounds raised in support of a change in the law "are identical to

the grounds we considered and rejected" in a previous decision, that decision should not be overruled. *Wakulich v. Mraz*, 203 Ill. 2d 223, 231, 237 (2003). In the case at bar, the State's arguments in support of changing the law of inconsistent verdicts were considered and rejected in *Klingenberg*. Accordingly, there is no basis for granting the State's request to overrule *Klingenberg*.

Notwithstanding the foregoing, the majority today chooses to depart from *stare decisis* and overrule *Klingenberg* in favor of *Powell*. Although the State has failed to present any justification for this departure, the majority and the special concurrence nevertheless advance reasons of their own. As is discussed more fully below, the justifications offered by the majority and the special concurrence fall far short of the "good cause" (*Heimgaertner*, 6 Ill. 2d at 167) or "compelling reason[ ]" (*Robinson*, 187 Ill. 2d at 463-64) that we have held is necessary to justify overruling prior precedent.

## A. The Majority's Explanation

In the case at bar, the majority explains its departure from *stare decisis* by noting that one of the reasons given in *Klingenberg* for rejecting *Powell* "was based on a fundamental misstatement of the law." 207 Ill. 2d at 134. Given this misstatement of the law, the majority concludes that *Klingenberg* must be reexamined to determine whether it "still supplies the better approach or whether we should join the majority of jurisdictions in following *Powell*." 207 Ill. 2d at 136.

The majority points to the assertion in *Klingenberg* that, if *Powell* were followed and all legally inconsistent convictions were affirmed, this would force defendants to bear the burden of a trial judge's error. According to *Klingenberg*, "[w]here a jury returns legally inconsistent verdicts, it is the trial court's duty to refuse the verdicts and to require the jury to deliberate further." *Klingenberg*, 172 Ill. 2d at 279. Under this view, inconsistent

verdicts result when the trial court fails to recognize the inconsistency and fails to direct the jury to continue deliberating. The error in this approach, according to the majority, lies in its assumption that a trial judge faced with a conviction that is legally inconsistent with an acquittal should direct the jury to deliberate further. In the majority's view, while such a procedure is perfectly proper where two legally inconsistent *guilty* verdicts are returned, it may be inappropriate where the inconsistent verdicts consist of an acquittal and a conviction. Indeed, requiring a jury to reconsider a verdict of *acquittal* would implicate double jeopardy concerns that are not present if the jury is reconsidering inconsistent *guilty* verdicts. The majority asserts that where inconsistent verdicts consist of an acquittal and a conviction, a trial judge has no duty to send the jury back for further deliberations. According to the majority, *Klingenberg*'s assertion that there *is* such a duty was a misstatement of the law. Therefore, the majority contends, *Klingenberg* must be overruled.

The main difficulty with the majority's explanation for overturning *Klingenberg* is that it fails to address *Klingenberg*'s other reasons for rejecting *Powell*. Even if *Klingenberg* were incorrect in assuming that a trial judge faced with inconsistent acquittals and convictions should require the jury to deliberate further, this does nothing to weaken the force of *Klingenberg*'s other objections to *Powell*'s reasoning. Nor does it invalidate *Klingenberg*'s rationale in support of the rule that legally inconsistent verdicts cannot stand. *Klingenberg*'s objections to *Powell*'s "jury lenity" and "fairness to the State" arguments remain unaffected, as does its assertion that legally inconsistent verdicts cannot stand because they are unreliable. Further, *Klingenberg*'s argument that the arbitrariness evidenced by such verdicts "undermines confidence in the quality of the jury's conclusion"

(*Klingenberg*, 172 Ill. 2d at 281) is no less valid in light of the alleged defect in *Klingenberg*'s reasoning identified by the majority. Regardless of this single alleged defect, *Klingenberg*'s rejection of *Powell* and its reaffirmation of the rule requiring the reversal of inconsistent convictions rest on a rationale that is independent of its further-deliberations argument.

Significantly, an argument identical to the majority's "single-defect" contention was rejected by the Supreme Court in *Powell*. As noted, in *Powell* the Court reaffirmed the inconsistent-verdicts rule set forth in *Dunn v. United States*, 284 U.S. 390, 76 L. Ed. 356, 52 S. Ct. 189 (1932). In explaining this decision, the Court in *Powell* acknowledged that there was a defect in *Dunn*'s rationale. *Powell* conceded that a statement about *res judicata* made by *Dunn* in support of its holding that verdicts need not be consistent "can no longer be accepted." *Powell*, 469 U.S. at 64, 83 L. Ed. 2d at 468, 105 S. Ct. at 476. However, this did not prevent the Court from reaffirming *Dunn*. As the Court in *Powell* stated:

> "We believe that the *Dunn* rule rests on a sound rationale that is independent of its theories of res judicata, and that it therefore survives an attack based upon its presently erroneous reliance on such theories." *Powell*, 469 U.S. at 64, 83 L. Ed. 2d at 468, 105 S. Ct. at 476.

By contrast, in the case at bar the majority points to a defect in *Klingenberg*'s rationale and concludes, unlike the Court in *Powell*, that *Klingenberg* cannot be reaffirmed but instead must be overruled. This position is taken even though, as stated previously, *Klingenberg*'s other objections to *Powell*'s reasoning remain viable, as does *Klingenberg*'s rationale in support of the rule it reaffirms. Thus the majority in the case at bar does the opposite of what the Court in *Powell* did under the same circumstances. Ironically, the majority does this in the name of adopting *Powell*.

In sum, the majority concludes that *Klingenberg* can-

not survive an attack based on the alleged single defect that the majority identifies in *Klingenberg*'s reasoning. The majority fails to explain how this alleged defect weakens or invalidates *Klingenberg*'s remaining objections to *Powell*, or how it undermines *Klingenberg*'s rationale in support of the rule that legally inconsistent verdicts cannot stand. Moreover, the majority's explanation for departing from *stare decisis* is premised upon an argument that, as noted, has been rejected by the Supreme Court in *Powell*, the very decision that the majority purports to adopt. The majority's justification for overruling *Klingenberg* falls far short of constituting the "good cause" (*Heimgaertner*, 6 Ill. 2d at 167), " 'special justification' " (*Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994), quoting *Arizona v. Rumsey*, 467 U.S. 203, 212, 81 L. Ed. 2d 164, 172, 104 S. Ct. 2305, 2311 (1984)), or "compelling reason[ ]" (*Robinson*, 187 Ill. 2d at 463-64) that has been held necessary to justify such a departure from *stare decisis*.

### B. The Special Concurrence

Perhaps recognizing the weakness of the majority's reasoning, Justice Fitzgerald offers an additional justification—again, one that was not advanced by the State—for departing from *stare decisis*. This explanation also is insufficient to justify overruling *Klingenberg*.

The special concurrence correctly notes that in *People v. Novak*, 163 Ill. 2d 93 (1994), we expressed a preference for the charging instrument approach in determining whether a particular offense is a lesser-included offense of another. In expressing this preference, we disapproved of the other two approaches that had been in use: the abstract elements approach, which focuses on the text of the statutes defining the offenses, and the inherent relationship approach, which examines the facts adduced at trial on the offense charged. The charging instrument

approach, by contrast, looks to the facts alleged in the indictment or information in order to determine whether a particular offense is a lesser-included offense of another. If the lesser offense is described by the instrument charging the greater, this lesser offense is considered a lesser-included offense of the greater. *Novak*, 163 Ill. 2d at 107. Under this approach, the indictment or information need not expressly allege all the elements of the lesser offense so long as those elements may be inferred from the charging instrument. *People v. Baldwin*, 199 Ill. 2d 1, 8 (2002).

The special concurrence notes further that, compared to the abstract elements approach, the charging instrument approach "has opened the door to the possibility of a greater number of lesser-included offenses." 207 Ill. 2d at 143 (Fitzgerald, J., specially concurring). This, the special concurrence asserts, has resulted in a corresponding increase in the number of possible inconsistent verdicts. This correspondence between lesser-included offenses and inconsistent verdicts exists, according to the special concurrence, because inconsistent verdicts, "by definition," involve a conviction on a compound offense and an acquittal on the predicate offense. 207 Ill. 2d at 144 (Fitzgerald, J., specially concurring). "In order to ascertain the existence of a predicate and compound offense," the special concurrence continues, "courts must evaluate the existence of a lesser-included offense using the appropriate lesser-included analysis." 207 Ill. 2d at 144 (Fitzgerald, J., specially concurring). According to this view, such an inconsistent-verdicts analysis necessarily involves a determination as to whether the purported predicate offense is also a lesser-included offense of the compound offense. The special concurrence concludes that, because lesser-included-offense determinations are inherent in inconsistent-verdicts analysis, the greater number of possible lesser-included offenses

created by the shift to the charging instrument approach has resulted in a correspondingly "greater number of verdict challenges based upon a purported legal inconsistency." 207 Ill. 2d at 145 (Fitzgerald, J., specially concurring).

According to the special concurrence, this result was insufficiently appreciated by the majority in *Klingenberg*, which was decided only two years after *Novak*. In the view of the special concurrence, if the full impact of the shift to the charging instrument approach had been realized, the majority in *Klingenberg* might not have rejected *Powell*, which simply dispenses with all inconsistent-verdicts review. The special concurrence therefore asserts that, because the decision in *Klingenberg* was based on "incomplete information," *Klingenberg* must now be revisited and overruled. 207 Ill. 2d at 145 (Fitzgerald, J., specially concurring).

The flaw in the special concurrence's reasoning is the emphasis it places on the charging instrument in an inconsistent-verdicts analysis. By definition, an inconsistent-verdicts analysis must focus on the findings of the jury. The charging instrument, however, is rarely, if ever, dispositive as to these findings. Indeed, in most cases, the jury does not even see the charging instrument. In the case at bar, for example, there is no indication that the jurors ever saw the information or that it was ever read to them. In this case involving inconsistent verdicts, the only logically relevant documents for a reviewing court are the jury instructions and the verdict forms.

Notwithstanding the foregoing, the special concurrence points to *Klingenberg* in support of its argument that lesser-included-offense determinations, which necessarily involve an examination of the charging instrument, are inherent in inconsistent-verdicts analysis. This is incorrect.

The defendant in *Klingenberg* was charged by indictment with two counts of official misconduct predicated on theft (counts II and III) and one count of the predicate offense of theft over $300 (count I). The jury found the defendant guilty of one count of official misconduct (count III) and not guilty of the other two counts, including the charge of theft (count I). The trial court attempted to reconcile the verdicts by finding that the theft that was charged in count I was not the predicate offense for the official misconduct charged in count III. The trial court reasoned that the theft count required the jury to find that the defendant committed a theft of property valued in excess of $300, while the official misconduct count could have been based on theft of less than $300.

*Klingenberg* rejected this reasoning. The issues instruction for official misconduct stated: " 'To sustain the charge of Official Misconduct as to count III, *regarding the amount of $1,015.00* \*\*\*.' (Emphasis added.)" *Klingenberg*, 172 Ill. 2d at 276. Similarly, the verdict for official misconduct noted: " 'Official Misconduct, count III—$1015.00.' " *Klingenberg*, 172 Ill. 2d at 276.

Thus the jury could have convicted the defendant of official misconduct as charged in count III only if it believed that he had committed a theft of property worth more than $300. The theft of property valued at more than $300 was therefore the predicate offense of the official misconduct for which the defendant was convicted. Accordingly, the defendant's acquittal of theft was legally inconsistent with his conviction for official misconduct predicated on theft. *Klingenberg*, 172 Ill. 2d at 277.

The court in *Klingenberg* did discuss the indictment in its inconsistent-verdicts analysis. *Klingenberg*, 172 Ill. 2d at 276. The special concurrence seizes upon this fact as evidence that *Klingenberg* relied on the indictment in making a lesser-included-offense determination as a first step in its inconsistent-verdicts analysis. There are two

problems with this assumption. First, the majority opinion in *Klingenberg* makes no mention of lesser-included offenses. Second, a careful reading of *Klingenberg* shows that the examination of the indictment came in response to the trial court's finding that "the theft charged in count I was not the predicate offense for the official misconduct charged in count III." *Klingenberg*, 172 Ill. 2d at 275. It was the trial court's finding that brought the indictment into the picture, and the majority in *Klingenberg* was simply responding to this finding. *Klingenberg*'s holding that the verdicts were legally inconsistent did not rest on the indictment. As is clear in the opinion, this holding could only have been based on an examination of the jury instructions and the verdict forms.

In sum, the special concurrence argues that *Klingenberg* must be overturned because of the previously unappreciated impact that the charging instrument approach to defining lesser-included offenses has on inconsistent-verdicts analysis. I disagree with this contention. As noted, the charging instrument is rarely, if ever, conclusive in determining whether a jury's verdicts are inconsistent. The special concurrence fails to explain why a document that the jury usually never sees is dispositive as to what the jury found. As was the case with the majority's justification for overruling *Klingenberg*, the explanation offered by the special concurrence does not constitute the "good cause" (*Heimgaertner*, 6 Ill. 2d at 167), " 'special justification' " (*Chicago Bar Ass'n*, 161 Ill. 2d at 510, quoting *Arizona v. Rumsey*, 467 U.S. 203, 212, 81 L. Ed. 2d 164, 172, 104 S. Ct. 2305, 2311 (1984)), or "compelling reason[ ]" (*Robinson*, 187 Ill. 2d at 463-64) that is needed to justify departing from prior precedent.

### III. HARMLESS ERROR REVIEW

Accepting that a majority of this court has concluded that *Klingenberg* must be revisited, I note that there is a

less drastic alternative to overruling this decision which the majority chooses not to address: namely, the application of harmless error review to inconsistent verdicts. Under such review, if the inconsistency between a conviction and an acquittal could be shown to be harmless, the conviction could be affirmed. This option would allow the majority to step back from *Klingenberg* without taking the extraordinary step of overruling *Klingenberg*.

Legally inconsistent verdicts unquestionably constitute error. *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 468-69, 105 S. Ct. at 477 ("Inconsistent verdicts *** present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred"). Where trial error has occurred, harmless error review is a well-established method for determining whether the conviction must be reversed. 111 Harv. L. Rev. at 822. "It is a commonplace of appellate practice that when a defendant is able to show that an error has infected the proceedings in the trial court, the appellate court must reverse the conviction unless the error was harmless." 111 Harv. L. Rev. at 822.

In the inconsistent-verdicts context, the question to be answered by such review is whether it is the defendant or the State that has been harmed by the inconsistent verdicts, *i.e.*, whether it is the conviction or the acquittal that is in error. This question is answered by determining the strength of the State's case against the defendant. 111 Harv. L. Rev. at 825. If the evidence in support of the defendant's guilt is so overwhelming as to leave beyond a reasonable doubt that his conviction would have been the same absent the error, the reviewing court can be reasonably certain that the defendant was not likely the one harmed by the inconsistent verdicts. In other words, it was the acquittal, not the conviction, that was in error. In such a case, the inconsistent conviction may be affirmed.

I recognize that the application of harmless error review in these circumstances constitutes a departure from *Klingenberg*'s conclusion that "[l]egally inconsistent verdicts cannot stand." *Klingenberg*, 172 Ill. 2d at 281. However, it is not nearly so severe a departure as the course advocated by the majority: the overruling of *Klingenberg* and the adoption of *Powell*. In view of my colleagues' apparent dissatisfaction with *Klingenberg*, I submit that this proposal provides a more measured response than the path chosen by the majority. It would permit the majority to step away from *Klingenberg* without taking the extreme position that a reviewing court should do nothing in the face of legally inconsistent verdicts, regardless of how egregious or troubling the inconsistency might be.

## IV. CONCLUSION

The majority today overrules *Klingenberg* for reasons that do not withstand scrutiny. No argument is made that *Klingenberg* has become unworkable, nor is any other compelling reason given for overturning at least two decades of prior precedent. Given these circumstances, the unavoidable conclusion is that the reason for overruling *Klingenberg* lies elsewhere. Unfortunately, it appears that a majority of the justices of this court have simply concluded that, were *Klingenberg* being argued for the first time today, they would decide the case differently. This is not a principled reason for overruling a prior decision. See *People v. Robinson*, 187 Ill. 2d 461, 463-64 (1999).

Finally, I note that the majority's decision in this case is one of several opinions in recent months in which this court has departed from controlling precedent for reasons that have been called into question. In *People v. Tisdel*, 201 Ill. 2d 210 (2002), we explicitly overruled *People v. Hayes*, 139 Ill. 2d 89 (1990), and overruled, *sub silentio, People v. Jones*, 153 Ill. 2d 155 (1992). As in the

case at bar, inadequate justification was provided for this departure from *stare decisis*. See *Tisdel*, 201 Ill. 2d at 221 (McMorrow, J., dissenting, joined by Freeman and Kilbride, JJ.). In *People v. Boclair*, 202 Ill. 2d 89 (2002), this court implicitly overturned *People v. Collins*, 202 Ill. 2d 59 (2002).[1] See *Boclair*, 202 Ill. 2d at 127 (McMorrow, J., specially concurring, joined by Freeman, J.). Earlier, in *Collins*, the continued viability of *People v. Williams*, 47 Ill. 2d 1 (1970), was called into question. See *Collins*, 202 Ill. 2d at 75 (McMorrow, J., dissenting, joined by Freeman and Kilbride, JJ.) ("The majority has offered no reason to depart from [the] settled holding [of *Williams*]"); *Collins*, 202 Ill. 2d at 86 (McMorrow, J., dissenting upon denial of rehearing, joined by Freeman, J.). Most recently, in *In re James E.*, 207 Ill. 2d 105 (2003), we created a "narrow exception" (207 Ill. 2d at 114) to the rule in *In re Hays*, 102 Ill. 2d 314 (1984), regarding involuntary commitment of a voluntarily admitted patient of a mental health facility. This exception effectively swallowed the rule, resulting in our implicitly overruling *Hays*.[2] See *James E.*, 207 Ill. 2d at 117 (Thomas, J., specially concurring); *James E.*, 207 Ill. 2d at 118 (McMorrow, C.J., dissenting, joined by Freeman, J.).

Stare decisis is not an inexorable command (*Wakulich*, 203 Ill. 2d at 230), and I do not suggest that departure from previous case law is always unacceptable. I merely emphasize that any departure from *stare decisis* must be supported by good cause. *Heimgaertner*, 6 Ill. 2d at 166-67. I would remind my colleagues that if the law

---

[1] Although two justices wrote separately stating that *Boclair* did not overrule *Collins*, the majority opinion did not speak to this issue.

[2] One member of the court, Justice Rarick, did not participate in the decision in *James E.* Accordingly, there is no majority holding in *James E.* as to whether *Hays* has been overruled.

were to change each time a decision is revisited or "with each change in the makeup of the court, then the concept that ours is a government of law and not of men would be nothing more than a pious cliche." *People v. Lewis*, 88 Ill. 2d 129, 167 (1981) (Ryan, J., concurring). I respectfully dissent.

JUSTICE FREEMAN joins in parts I, II and IV of this dissent.

JUSTICE KILBRIDE joins in parts I and II of this dissent.

JUSTICE FREEMAN, also dissenting:
I find myself in a somewhat unusual situation in this case, for I agree with the majority that the better rule is that inconsistent verdicts should simply be allowed to stand. This is how I believed the issue should have been resolved in *Klingenberg*. See *Klingenberg*, 172 Ill. 2d at 285-89 (Miller, J, dissenting, joined by Freeman, J.). And yet I must dissent.

The basis for my departure from the majority is the doctrine of *stare decisis*.[3] I must agree with Justice McMorrow that neither the majority nor the special concurrence has given sufficient reason that *stare decisis* should not dictate our result. Disagreement with the analysis employed in previous cases is simply not sufficient—such an exception would wholly swallow the rule.

Accordingly, I join parts I, II, and IV of Justice McMorrow's dissent. I do not join part III of her dissent, because I believe that if *stare decisis* is to be abandoned,

---

[3]This doctrine did not dictate my vote in *Klingenberg*, which was the first Illinois case to consider whether we should continue to reverse inconsistent verdicts in the wake of *Powell*. That decision by the high court, reanalyzing and reaffirming the repudiation of the doctrine in the federal courts, was sufficient cause to reweigh the issue's merits.

the better course is to do away with inconsistent verdict analysis altogether, as the majority does.

JUSTICE KILBRIDE, also dissenting:

I respectfully dissent, joining parts I and II of Justice McMorrow's dissent. I also write separately, however, because I believe there is another, even more critical, basis for rejecting the majority's decision to overrule our established precedent in *People v. Klingenberg*, 172 Ill. 2d 270 (1996). In addition to its unwarranted abandonment of the fundamental principles of *stare decisis*, the majority has unjustifiably elected to address the question of *Klingenberg*'s continued viability despite its acknowledgment of an alternative basis for reviewing this appeal. 207 Ill. 2d at 129. This alternative basis is the appellate court's holding that the conviction for mob action was not legally inconsistent with the aggravated battery acquittal. See 207 Ill. 2d at 127. This issue was argued by the parties, but the majority has chosen to bypass it altogether in favor of the State's alternative argument, asking us to overrule our prior case law in the absence of any rationale even vaguely approaching ''good cause,'' ''special justification,'' or ''compelling reason[ ]'' (207 Ill. 2d at 153, 157, 161 (McMorrow, C.J., dissenting, joined by Freeman and Kilbride, JJ.)). See 207 Ill. 2d at 132-33.

Because I believe that this case can be, and should have been, analyzed on an entirely different basis, as argued by both parties and properly ruled on by the appellate court, the State's alternative argument should not have been reached on its merits. The appellate court's holding that the verdicts are not legally inconsistent is correct and dispositive of the principle issue raised by the parties. Under these circumstances, the majority's reconsideration of *Klingenberg* is both unnecessary and unwise (see 207 Ill. 2d at 152-54 (McMorrow, C.J., dissenting, joined by Freeman and Kilbride, JJ.)). For this reason, I write separately, as well as join in parts I and II

of Justice McMorrow's dissent. I decline to join part III of that dissent because the parties did not raise or argue the issue of harmless error review, and it is unnecessary to the disposition of this appeal.