2025 IL App (1st) 221228-U
No. 1-22-1228
Order filed February 20, 2025

FIRST DISTRICT
FOURTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 7949 |
| | ) | |
| DONNELL COLEMAN, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court judgment is affirmed where defendant's acquittal of attempted first degree murder is not legally inconsistent with findings of guilt for armed habitual criminal and aggravated discharge of a firearm.

¶ 2    Following a bench trial, defendant Donnell Coleman was found guilty of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)) and sentenced to concurrent prison terms of 22 years and 12 years, respectively. On appeal, defendant argues that his convictions are legally inconsistent with his acquittal of attempted first degree murder. We affirm.

¶ 3    Defendant was charged with six counts of attempted first degree murder with a firearm of Ida Patterson, single counts of aggravated battery of Patterson, armed habitual criminal, and aggravated discharge of a firearm at Patterson, three counts of aggravated domestic battery of Patterson, two counts of unlawful use or possession of a weapon by a felon, and two counts of aggravated unlawful use of a weapon. All counts arose from an incident on April 5, 2021, wherein defendant allegedly discharged a firearm which injured Patterson.

¶ 4    At trial, Patterson identified defendant as her cousin. She lived across the street from him, and they did not see "eye-to-eye."

¶ 5    On April 5, 2021, at approximately 10 p.m., Patterson sat on her porch with other people. At the same time, defendant was on his porch with other people. Patterson observed two individuals walk toward defendant's porch, and the people on the porch argue with the individuals. Then, Patterson heard a gunshot at defendant's residence, and an individual ran across the street saying, "[h]e shooting at us." Someone passed a firearm to defendant, who shot at the group on Patterson's porch. Defendant and "Omarion" fired at one another, and defendant chased Omarion around a vehicle, shooting at him. Defendant then stood in the street, turned, looked at Patterson, and shot her four times.

¶ 6    Patterson agreed that she had viewed POD camera footage of the incident with the prosecutor, which the State published. Patterson identified the individuals in the video, including defendant. Patterson also reviewed photographs of the scene and the individuals present, which were admitted into evidence. No exhibits from the trial are included in the appellate record.

¶ 7    Chicago police detective Bernardo Rodarte testified that on April 5, 2021, he went to the scene and observed "puddles of blood, blood soaked clothing, and several vehicles that were shot," with shell casings on the street, sidewalk, and grass.

¶ 8     The State then proceeded by stipulation. The parties first stipulated that, if called, Officer Crocker would testify that he responded to the scene while wearing a body-worn camera.[1] Crocker would identify an individual in the footage as defendant. The State then published the body camera footage. The parties also stipulated that Dr. Nicholas Ludmer examined Patterson on April 5, 2021, and identified gunshot wounds "to her left hip, left elbow, lateral flank and left breast." The parties further stipulated that defendant did not possess a valid Firearm Owners Identification card or a valid concealed carry license on April 5, 2024. Lastly, the parties stipulated that defendant was convicted of unlawful use of a weapon by a felon in case numbers 19 CR 92101 and 11 CR 1603501. The State introduced certified copies of his convictions.

¶ 9     Prior to closing arguments, the State nol-prossed the charge for aggravated battery of Patterson. The court found defendant guilty of armed habitual criminal, aggravated discharge of a firearm, both counts of unlawful use or possession of a weapon by a felon, and both counts of aggravated unlawful use of a weapon. It found defendant not guilty of the attempted first degree murder of Patterson and aggravated domestic battery of Patterson counts.

¶ 10    In ruling, the court commented that the POD camera video showed defendant walking in the street while other people are shooting. Defendant fired multiple shots and appeared to target a person "crouching and running around" a vehicle. The court noted the State's argument that defendant fired at the porch where Patterson was, but found this was not visible in the video. but the video did establish that defendant discharged a firearm "multiple times at several people" other than Patterson. The court noted that the State did not need to prove the identity of a specific person with respect to the aggravated discharge of a firearm charge.

---

[1] Officer Crocker's first name does not appear in the record on appeal.

¶ 11    Defendant filed a motion "to reconsider" arguing that the State failed to prove him guilty beyond a reasonable doubt because Patterson's testimony was inconsistent and incomplete as to whether defendant possessed a firearm. The court denied the motion. After a hearing, the court merged the unlawful use or possession of a weapon by a felon and aggravated unlawful use of a weapon counts into the armed habitual criminal count. It imposed concurrent prison terms of 22 years for armed habitual criminal and 12 years for aggravated discharge of a firearm.

¶ 12    On appeal, defendant argues that the State "failed to prove [him] guilty beyond a reasonable doubt" of armed habitual criminal and aggravated discharge of a firearm because "[t]he same evidence" that led to his acquittal of first degree murder should have led to his acquittal of armed habitual criminal and aggravated discharge of a firearm.

¶ 13    As an initial matter, although defendant frames his claim as a challenge to the sufficiency of the evidence, he essentially argues that the verdicts are legally inconsistent. See *People v. Dryden*, 363 Ill. App. 3d 447, 451 (2006); see also *People v. Reed*, 396 Ill. App. 3d 636, 649 (2009) (sufficiency of the evidence review " 'should not be confused with the problems caused by inconsistent verdicts' " (quoting *United States v. Powell*, 469 U.S. 57, 67 (1984)).

¶ 14    "Legally inconsistent verdicts occur when an essential element of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts." (Internal quotation marks omitted.) *People v. Price*, 221 Ill. 2d 182, 188 (2006). Verdicts are not legally inconsistent when the charges have different elements. *People v. Cruz*, 2021 IL App (1st) 190132, ¶ 67. Whether verdicts are legally inconsistent is a question of law which we review *de novo*. *Price*, 221 Ill. 2d at 189.

¶ 15    As defendant did not object at trial and assert this question of law in a posttrial motion, the issue is forfeited on appeal. *People v. Brand*, 2021 IL 125945, ¶ 32. The State argues that defendant

forfeited an argument that the evidence was insufficient to support his convictions for his failure to support that argument in his brief. However, the State does not argue that defendant's claim that the verdicts were inconsistent was forfeited on review and thus has forfeited any argument regarding defendant's forfeiture. *People v. Reed*, 2016 IL App (1st) 140498, ¶ 13. Accordingly, we address the merits of defendant's claim.

¶ 16    Defendant's contention is without merit. In *People v. Jones*, 207 Ill. 2d 122, 133-34 (2003), the Illinois Supreme Court held that "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges." *Jones* involved a jury trial, but the supreme court expanded its reasoning to verdicts in bench trials in *People v. McCoy*, 207 Ill. 2d 352, 357-58 (2003), noting the presumption that "a trial judge knows the law." *McCoy* found it need not address whether the defendant's two convictions were legally inconsistent with an acquittal in that case because, "[e]ven if the verdict was inconsistent, the trial court's findings of guilt stand." *Id.* at 358 (a conviction which is legally inconsistent with an acquittal is not a basis for reversal under *Jones*); see also *People v. Alexander*, 2017 IL App (1st) 142170, ¶ 38.

¶ 17    Under *Jones* and *McCoy*, defendant's claim that his convictions for armed habitual criminal and aggravated discharge of a firearm must be reversed as they are legally inconsistent with his acquittal for attempted first degree murder fails. See *McCoy*, 207 Ill. 2d at 357-58. As defendant's convictions would stand despite legal inconsistency, we need not determine whether his convictions are legally inconsistent with the acquittal. See *id.* at 358.

¶ 18    Nevertheless, defendant's acquittal of attempted first degree murder is not legally inconsistent with his convictions for armed habitual criminal and aggravated discharge of a firearm.

¶ 19    Attempted first degree murder requires the State to prove that "(1) defendant performed an act constituting a substantial step toward the commission of murder, and (2) defendant possessed the criminal intent to kill the victim." *People v. Viramontes*, 2017 IL App (1st) 142085, ¶ 52; 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2020). Attempted murder is a specific intent crime, so the State must prove the defendant had the specific intent to kill. *Viramontes*, 2017 IL App (1st) 142085, ¶ 52.

¶ 20    In contrast, neither armed habitual criminal nor, as charged here, aggravated discharge of a firearm require a specific intent to kill. An armed habitual criminal charge requires the State to prove a defendant's possession of a firearm after having been convicted of two or more qualifying offenses. *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 15; 720 ILCS 5/24-1.7 (West 2020). To prove aggravated discharge of a firearm as charged, the State needed to prove that defendant knowingly or intentionally "discharge[d] a firearm in the direction of another person." 720 ILCS 5/24-1.2(a)(2) (West 2020). As neither of defendant's two convictions required the State to prove a specific intent to kill, the verdicts were not legally inconsistent with an acquittal for attempted first degree murder.[2] See *Cruz*, 2021 IL App (1st) 190132, ¶ 67.

¶ 21    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 22    Affirmed.

---

[2] Defendant also asserts that the trial court did not discuss the basis for rendering its verdicts, and recites the court's ruling verbatim. We note that the POD camera video, which the court referenced heavily in its ruling, is not included in the record on appeal. Defendant, as the appellant, has the burden to present a record sufficient to support his claims of error, and any doubts or deficiencies arising from an incomplete record will be resolved against him. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).